## ANTHONY vs. ANTHONY.

Where it is agreed between two parties that one should acquire, by means of a purchase and sale of real estate, an unencumbered legal title, to be held as security for money advanced to the other, the transaction, though in form an absolute sale of the property, is essentially a mortgage: And on a bill to set aside the legal

title thus acquired, and have the transaction declared to be a mortgage, the court will consider all the circumstances of the case to ascertain the real intention of the parties at the time of the agreement.

If a mortgagor goes into equity to redeem, he will not be permitted to do so but upon payment, not only of the mortgage debt, but of all other debts due from him to the mortgagee; and so, where he seeks a recovery of rents and profits. But if the mortgagee seeks a foreclosure in chancery, the mortgagor is permitted to redeem upon payment of the mortgage debt alone.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

WILLIAMS & WILLIAMS, for the appellant.

We shall confine ourselves, principally, to the discussion of the two main leading questions involved. First, was Mrs. Anthony a trustee. Second, if she was, did the court, in the reference to the master for account, make the basis too narrow in excluding matters of personal dealing, and in afterwards refusing to correct the master's report on exceptions by a re-reference. As to the first proposition. Trusts are of two kinds, express, or implied: express trusts can only exist by contract; implied trusts are created or raised by operation of law, from the relation of parties or the circumstances of the case. While it is true that the bill in this case is drawn upon the basis of an express trust, and it might be questionable whether he would not be bound by the aspect of his bill, yet as the court might be of opinion, that appellee would be entitled to relief under his general prayer, if the state of facts alleged authorized relief, we will first enquire whether from relation of parties, or the circumstances of the case, either, or both, the law will imply a trust.

The only legal relation that existed between the parties to this suit prior to the purchase of the Bank mortgage, and sale and purchase under it, by Mrs. Anthony, was that of mortgagor and mortgagee. That is, Mrs. Anthony claimed an interest under the mortgage of 10th January, 1843, and also was made

a beneficiary under the deed of trust to Pike. We submit that the fact of Mrs. Anthony being a mortgagee of the property, or beneficiary of a trust under it, did not preclude her from purchasing and acquiring a permanent lien, and title thereunder, even though that paramount lien and title should have emanated from the mortgagor, (appellee.)

A mortgagee has equal rights with third persons to purchase mortgaged premises, and the lowness of price at which he purchased, is no ground to set aside a sale. *Mott vs. Walsh*, 3 *Edwards Ch. Rep.* 590. And a sale under a power as in this case divests the equity of redemption. See *Kinsley vs. Ames*, 2 *Met. R.* 29; *Blair vs. Ross*, 4 *Blackford*, 540; 11 *Vermont*, 9.

A mortgagee may buy under his own mortgage and bar the equity of redemption, if he does not use his position to influence the mortgagor to part with the estate for less than its full value, (which is not pretended in this case.) *Hicks vs. Hicks*, 5 *Gill & Johnson*, 753–4.

The owner of the equity of redemption is not entitled to redeem the mortgaged premises after the same have been put up and sold; although the *mortgagee* became the purchaser at such sale. *Brown vs. Front et al.*, 10 *Paige*, 243. See, also, 9 *N. H. Rep.* 404; *Hilton vs. Hilton*, 3 *Dana*, 388.

There is no question made about Mrs. Anthony's right to sell under the power of sale, and her right to sell and buy is clearly sustained by authority; besides being provided for by the express stipulations of the mortgage. See 1 *Paige* 48, 78, 68, 69, 70; 2 *Cowen*, 202; 10 *Johnson*, 195.

We suppose that the appellee will not seriously insist upon an implied trust, as he has not alleged or relied upon it heretofore, in the court below, either by allegation, or argument, relying solely upon an express trust, and to that point we now pass.

Does the proof sustain the allegation?

The bill charges the existence of such a trust, *in parol*. Mrs. Anthony, in her answer, denies the trust and all the allegations,

31

and charges in the bill, in reference thereto, in the most emphatic manner. This answer, by the rules of chancery, being directly responsive to the gravamen of the bill, is testimony, and establishes fully the allegations of the answer in this respect, as fully as though proven by one witness. Such being the legal effect of her answer; and to overthrow her answer in this respect, it requires the testimony of *two witnesses,* or one witness with strong corroborating circumstances. We look in vain for any testimony coming up to this standard in the transcript, to overthrow the answer. For, aside from the statements, loose and unsatisfactory as they are, of pretended admission of Mrs. Anthony, which we gather from the testimony of the Oldhams and the two Thorntons, which is indefinite and unsatisfactory, not only as to the time when made, *i. e.,* whether before or after the purchase under the Bank mortgage in August, 1848, which is the period at which Mrs. Anthony commenced claiming an absolute title, but also in the character of the admission. And even giving it its full weight as an admission, it is the weakest and most unreliable testimony that can be introduced into a court of justice, not only because the witness may, and in most cases does, misunderstand what is said; but, also, because he may not correctly remember what was said after such lapse of time, and the party making the admission, may not enter into explanations, which very materially weaken the force of the admission, or changes its character altogether. Besides a false statement as to an admission, is easily fabricated and hard to disprove. *Prater adm. vs. Frazier and wife,* 6 *Eng.* 249; *Phillips on Ev., Cowen & Hill's notes,* 211.

And we submit that taking these pretended admissions in their strongest light against Mrs. Anthony, they are not entitled to the weight of a single witness, and would not satisfy the minds of a court or jury as well of the truth of the facts which the admission was adduced to prove.

To enforce a specific trust upon real estate from loose and equivocal expressions made by one of the parties in mere social conversations held at *different* times, would be inequitable and

contrary to the spirit and policy of the statute of frauds. *Mercer adm'r vs. Stark*, 1 *Smede & Marshall Chan. Rep.* 479 ; *Steere vs. Steere et al.*, 5 *J. C. Rep.* 220 ; *Botford vs. Burt*, 2 *J. C. Rep.* 409.

Even if an express contract in parol was clearly proven, the statute of frauds would render it void : for it cannot be contended for a moment that there is the semblance of a memorandum in writing signed by Mrs. Anthony, binding herself to hold for Philip's benefit.

. Where the declaration of trust was made by *the grantor at the time of making conveyance*, a parol trust, so declared, was good, but where .the declaration of trust was made by the grantee (Mrs. Anthony,) she paying the money, then, it is a *mere contract* to make a conveyance *hereafter*, and is prohibited by the statute of frauds. *Freeman vs. Freeman*, 2 *Select Equity Cases*, (*by Parsons*,) 89.

Even if the decree of the court below is correct in holding Mrs. Anthony a trustee as to the property, yet the basis of reference, upon which the master took the accounts between the parties, was too narrow, and by its operation Mrs. Anthony was deprived of her right of set-off, as to matter of "mere personal dealing, not in some way connected with the Anthony House property."

We think that this action was erroneous :   1st. Because it is a principle as old as equity jurisprudence, that he that seeks equity, must do it independent of the rules and principles of equity, which clearly gives Mrs. Anthony the right to set-off, and that too without the necessity of a cross-bill; yet we are not left to this alone, for we have an express statutory provision, giving the right of set-off in this case, and making it a matter of defence.   See *Dig.*, *chap.* 28, *sec.* 26, which provides expressly for the right of set-off in chancery suits, upon money demands, to the same extent as at law.   Set-off is matter of defence, and entitles defendants to withhold money due them. *Higgs vs. Warner*, 14 *Ark.* 192.

Set-off was a matter of peculiar equity jurisdiction before

the statute of set-off, and none but a court of equity could relieve. *Menifee admr. vs. Ball et al.*, 1 *Eng.* 520 ; *Hempstead and Conway vs. Watkins*, 1 *Eng.* 318.

This is not a bill to redeem, but simply a money demand, to which the law of set-off applies, yet even upon a bill to redeem, Mrs. Anthony would be entitled to her advances between her and Philip. See *Coote on Mortgages* 395 ; *Ib.* 408

An executor (a trustee) may set-off a debt due his testator from a legatee. *Ward on Legacies* 318.

If a mortgagor comes in to redeem, he must pay up not only the mortgaged money, but also subsequent advances made by the mortgagee. *Ogle vs. Shipp*, 1 *A. K. Marshall*, 287.

HEMPSTEAD and BERTRAND, for appellee.

The mortgage on the 10th of January, 1843, was not only effectual to secure the advances then made, but likewise to cover future advances. *Hendricks vs. Robinson*, 2 *J. C. R.* 309.

We take it to be clear, that a mortgage will stand to secure the real equitable claims of the mortgagee ; whether they existed at the date of the mortgage, or arose afterwards. A mortgage may be held as security for future advances. *Brinkerhoff vs. Marvin*, 5 *J. C. R.* 326, 327; *James vs. Johnson*, 6 *J. C. R.* 429 ; *Livingston vs. McInlay*, 16 *J. C. R.* 165 ; *Shirras vs. Craig*, 7 *Cranch*, 34.

Courts of equity do not regard the forms of instruments, but look to the intention, and give to the acts of the parties the construction which that intention justifies and requires. *Flagg vs. Mann*, 2 *Sumner* 530.

In a letter, addressed by Mary S. Anthony to James C. Anthony, dated Little Rock, September 1, 1848, she says: "*I only took the Anthony House to save the money William and myself have advanced, otherwise it would have been totally sacrificed, and no one paid.*" Again, in a letter, written by her to Philip, dated December 24, 1848, attached to the master's report— stricken from the files, but preserved on the record by bill of exceptions—she says she heartily regrets she did not give up

all after the sale by the Bank to Brown, and emphatically states what her expectation had been, in the following strong language: "*All I want or ever expected to get is what you owe me and William.*"

Aside from this documentary evidence, the oral testimony clearly demonstrates that Mrs. Anthony, in reference to this property, occupied the position of a mortgagee, or a trustee with an interest.

The law is, that the mortgagee can take no advantage of the mortgagor, or derive a profit, or make a speculation, directly or indirectly, out of the mortgage. All the mortgagee is entitled to is the principal and interest. *Chambers vs. Goldwin*, 9 *Vesey*, 271; *Langstaffe vs. Fenwick* 10 *Vesey* 405.

Now as to what constitutes a mortgage, there is no difficulty whatever in courts of equity. No particular form or words of conveyance are necessary, and indeed whenever a conveyance, assignment or other instrument, transferring or charging an estate is originally intended between the parties as a security for money or any other incumbrance; whether this intention appears from the same instrument or from any other, or by parol evidence, it is always considered in equity as a mortgage. And also parol evidence is admissable to show that a conveyance, absolute on its face, was intended as a mere mortgage or security for money. 2 *Story's Eq.*, sec. 1018; *Morris vs. Nixon*, 1 *How. S. C. R.* 118; *Marks vs. Pell*, 1 *Johns. Ch. Rep.* 594 *Flagg vs. Mann*, 2 *Sumner*, 540.

Now certainly the pleadings show—the answer of Mrs. Anthony expressly admits, and the testimony undeniably proves, that the intention and agreement between herself and Philip L. Anthony, were that she was to take and hold the Anthony House property for advances made by her to disincumber it, for the benefit of Philip L. Anthony, and as security for moneys advanced, and to be loaned by her to him; and to that end and for that purpose she proceeded to acquire and did obtain the legal title to the Anthony House property—and admitted at

various times, and to various persons, as we have seen, that she held it for the benefit of Philip L. Anthony to secure her for moneys, and when they were discharged, the balance was to belong to Philip L. Anthony.

Mortgages may not only be created by the express deeds and contracts of the parties; but *they may be implied in equity* from the nature of the *transactions between the parties.* 2 *Story's Eq.* 1020.

There can be no serious doubt but that Mrs. Anthony must be held as a trustee coupled with an interest, of the Anthony House property. *Holdridge vs. Gillespie*, 2 *J. C· R.* 33; *Trapnall vs. Brown*, 19 *Ark.* 39, 50.

An attempt to convert into an absolute conveyance an instrument which was intended to be in the nature of a mortgage, or to set up as absolute and conclusive, a deed which is conditional, is a fraud upon the law, which a court of equity will rebuke and defeat. *Rogan vs. Walker*, 1 *Wis.* 527.

*Gordon vs. Lewis*, (2 *Sumner*, 144,) was a bill to redeem by an assignee of a mortgagor, brought against the defendant as assignee of the mortgagee. The mortgage was admitted, but the defendants insisted that by entry and foreclosure and visible and exclusive possession, they had acquired an absolute title, and were owners, and therefore denied any liability to account to the mortgagor. STORY, J., said, " the defendants could not now be permitted to set up an adverse title against the mortgagor, or his assignees, to protect themselves from accountability," 146. " *No principle*," said he, "*is better established than that a mortgagee* SHALL NOT GET ANY ADVANTAGE *out of the mortgage fund beyond his principal and interest.* Between mortgagor and mortgagee, the latter, when in possession, *must account for the actual rents and profits received or made by him*, if these rents and profits can be actually ascertained. Where they cannot be; there must be a resort to a fair occupation rent." *Wilson vs. Metcalf*, 1 *Russ.* 530; *Gubbins vs. Reid*, 2 *Sch. & Lef.* 218; 4 *Kent* 166; 3 *Powell on Mort.* 499, *note E*, 2.

There is a strong analogy between that case and the one in hand, and we invite attention to it.

Mrs. Anthony was in fact a mortgagee in possession, and had a right to sell with, or without Philip's consent to pay her debt; but was accountable for the proceeds, and for rents and profits. The consent is given either expressly or impliedly in mortgages themselves; and it is new law, and startling law, too, if by consenting to a sale, the mortgagor loses all right to hold the mortgagee accountable, and thereby renounces all claim to the proceeds after the payment of the mortgage debt!

In view of the relation of the parties, and the facts and circumstances of the whole case, and of principles of equity jurisprudence as ancient as commendable, no alternative was left to the chancellor but to hold and declare, as he did, that Mrs. Anthony was not in equity, the absolute owner of the Anthony House property, but that she had charged it with a trust, in favor of Philip L. Anthony, the appellee.

The chancellor, following the law of mortgages and the manifest propriety of things, directed an account to be taken by the master as to the dealings between these parties, in reference to the Anthony House property alone; and specially directed that no mere personal dealings between them should come into the account.

This was done, because it appeared to him, as the record in fact shows, that there were other suits between these same parties in other courts, involving those dealings, and having no reference to this property at all. And, besides, it would have opened up stale accounts and demands, and brought before the court transactions of twenty and twenty-five years standing— barred by limitation and lapse of time.

Obviously there was a propriety in confining the account to the mortgage debt and property—excluding other transactions, not therewith connected. That was the case made by the bill, and that alone was the matter in issue between the parties. And if Mrs. Anthony desired, or could have had, all past dealing and transactions of every kind investigated and reinvesti-

gated and overhauled in this suit, she ought to have filed a cross-bill, or made her answer a cross-bill against Philip L. Anthony, for that purpose, and praying for a full and regular account. And then a distinct issue could have been made between the parties on that head ; and Philip could have had an opportunity of meeting stale accounts and demands, by proof, showing them to be false, or paid or discharged, or released.

The case of *Troup vs. Haight, Hopkins Ch. R.* 239, 270, is a direct authority on the point that demands, distinct from the mortgage debt, cannot be set-off in a suit to foreclose; and, in any event, that such counter demands can only be presented by a cross-bill. *Kershaw vs. Thompson,* 4 *J. C. R.* 616; *Preston vs. Strulton,* 1 *Anst.* 50.

Mr. Justice COMPTON delivered the opinion of the court.

On the 25th January, 1842, James C. Anthony made his promissory note to the Bank of the State of Arkansas, for $15,264 93, due at six months, and renewable according to the rules and regulations of the Bank, to secure the payment of which, he executed his mortgage, dated 22d March, 1842, on certain real estate in the city of Little Rock, known as the Anthony House property. The mortgage contained a power of sale, in case of default, and provided for possession by the mortgagor until sale under the power.

On the 1st July, 1842, James C. Anthony conveyed the Anthony House property, by deed in fee simple, to Philip L. Anthony, who engaged to pay off the note of James C. Anthony to the Bank, as part of the consideration agreed to be given by him for the property. The note remained unpaid, however, and being in arrear, the officers of the Bank, on the 30th December, 1847, assigned it and the mortgage to John Brown, who assumed the debt to the Bank.

On the 2d May, 1848, Brown assigned the note and mortgage to Mrs. Mary S. Anthony, in consideration of which she assumed the Bank debt, then amounting to $16,244 91, and gave her note to the Bank in that sum. She went into possession, and,

under the power of sale contained in the mortgage, sold the premises at public sale, on the 4th August, 1848, and William A. Anthony became the purchaser, to whom she made a deed. No money, however, was paid by him. He purchased for the benefit of Mrs. Anthony, it being her object to vest in herself, by means of the sale, the legal title to the property, which she afterwards sold for the sum of $18,000.

The object of the bill is to have the purchase by Mrs. Anthony of the mortgage executed to the Bank, and subsequent sale of the Anthony House property under the power contained in it, declared a mortgage for the security of money loaned by her to Philip L. Anthony, and to recover any surplus of the rents and proceeds of the sale of the mortgaged premises, that may be ascertained after deducting the money thus secured.

Whether the transaction between the parties is to be regarded as an absolute divestiture of the title of Philip L. Anthony, the complainant, or as a mere security for the payment of money, and, therefore, a mortgage, is a question which must depend upon the evidence adduced.

After his purchase, in 1842, the complainant took possession of the Anthony House property—which was a hotel—and being pressed for the means to carry on the business of the establishment, and to pay the incumbrance the Bank held upon the property, obtained directly, and indirectly, divers loans and advances from Mrs. Anthony, who was his mother, for those purposes; to secure which he executed to her a mortgage on the Anthony House and other property, dated 10th January, 1843. On the 11th October, 1845, the complainant obtained a further loan of $1500 from Mrs. Anthony, then residing in Tennessee, and besides delivering to her the note of James Lawson for $1500, as collateral security, executed and delivered, at the same time, the following paper writing:

"I Philip L. Anthony hereby obligate myself, for and in consideration that my mother, Mrs. Mary S. Anthony, now makes me an advance of fifteen hundred dollars, that I will have the pro-

perty known as the Anthony House, situated in the city of Little Rock, and State of Arkansas, sold at sheriff's sale at the coming term of the Circuit Court of Pulaski County, if practicable, and if not practicable, then at the term of said Court next following, and to procure and record for her a deed from the said sheriff, conveying to her a full legal title to said property, subject, however, to the claim of the Bank of the State of Arkansas, which claim amounts to the sum of twelve thousand nine hundred dollars; and I hereby obligate myself to pay off all the executions against the property older than the one under which the property may be sold, and to apply the rents of the property, deducting repairs, first to the extinguishment of the debt due the State Bank, and lastly, those due the said Mary S. Anthony; and certain other debts due to William A. Anthony, James G. Anthony, and Thomas A. Anthony: and, after the payment of the above debts, then the said Mary S. is to re-convey to the said Philip the right she holds in said property; but it is herein expressly stipulated that the said Philip does not part with his equitable right in said property, but procures to the said Mary the legal right for the security of the debt due her, and in the event a sale can be effected, of the property, for the payment of the debts due, the said Philip obligates himself to make such sale, and pass all the interest he herein reserves. In witness whereof, I have hereunto subscribed my name, this 11th day of October, 1845.

PHILIP L. ANTHONY."

The property, however, was not sold as provided for in this instrument, but remained encumbered until the 4th August, 1848, when, as we have seen, it was sold by Mrs. Anthony under the power of sale in the mortgage she had purchased from the Bank. The assignment of the mortgage was procured and the sale under it effected at the suggestion of the complainant, who participated actively in the entire transaction, and represented Mrs. Anthony in conducting the sale.

*Samuel Oldham*, a witness, testifies, that in a conversation with Mrs. Anthony, she said she had been induced to enter into

the Anthony House transaction, solely with the view to her son's interest, and to use her own language, "to save something for Philip, poor fellow." This conversation, the witness says, occurred shortly after the transaction, "probably after the lapse of some three or four weeks."

*James Oldham* testifies that Mrs. Anthony declared to him that her object was to secure the property, known as the Anthony House, to her son Philip.

*Mrs. Susan H. Thornton* states that she understood from Mrs. Anthony that she had, and was to make advances to save the Anthony House property, and that she was acting as a "trustee"—that she was to pay off the debts and receive what was due her, and that the balance would belong to Philip. On cross-examination, she says, Mrs. Anthony "was to disencumber the property for Philip's benefit, remunerate herself and return the balance to Philip." The witness could not state the precise time she learned these facts from Mrs. Anthony.

*John S. Thornton* states that Philip L. Anthony was the owner of the Anthony House property, and had become involved, and that Mrs. Anthony left Tennessee to go to Arkansas to pay his debts, and after paying them, the surplus of the property was to go to Philip. The witness derived this information from conversations in Mrs. Anthony's family, but could not positively assert that he heard her say anything on the subject.

Although the answer of Mrs. Anthony is unsatisfactory, in that it is argumentative, and, in some particulars, evasive, still, her admissions, as proven by the witnesses, would not be sufficient, if standing alone, to overturn the denial of the answer. Considering these admissions, however, in connection with the corroborating circumstances above mentioned, and others more minute, apparent in the record, the court is satisfied that there was a contract prior to the purchase of the mortgage of the Bank and the sale under it, by which it was agreed that Mrs. Anthony should acquire, by means of such purchase and sale, the unencumbered legal title to the Anthony House property; to be held by her as security for the money she had advanced to

the complainant. Consequently, the transaction between the parties, though in form an absolute sale of the property, was essentially a mortgage. The mode by which the complainant's title was conveyed, was immaterial; for, although he divested himself of the legal title when he executed the mortgage to the Bank, the equitable title remained in him, and the sale under the mortgage, after it had been assigned to Mrs. Anthony, was as effectual to divest that equitable title as a deed voluntarily executed by himself would have been to divest the legal title had there been no mortgage; and, in either case, if an agreement be shown, though in parol—as was done here—that the conveyance was to operate as a security for the loan of money, such conveyance is a mortgage. *Loyd vs. Currin*, 3 *Hump.* 462; *Overton vs. Bigelow*, 3 *Yerg.* 513; *Russell vs. Southard*, 12 *How.* (*S. C.*) 139; *Whettick vs. Kane*, 1 *Paige* 202; *Flagg vs. Mann*, 2 *Sumn.* 538; *Wright vs. Bates*, 13 *Verm.* 341.

The court below took this view of the case, and ordered an account, directing the master that no matters of dealing between the parties, except those which related to the Anthony House property, should be allowed to come into the account. Under this order, Mrs. Anthony was not permitted to establish several items of indebtedness against the complainant, other than the debts secured by the conveyance of the property, which she claimed and proposed to prove. In the direction to the master, we think the court erred. If a mortgagor goes into equity to redeem, he will not be permitted to do so, but upon payment, not only of the mortgage debt, but of all other debts due from him to the mortgagee. It was so expressly held in *Lee et al., vs. Stone et al.*, 5 *Gill & John.* 1. And in *Walling vs. Aiken*, 1 *McMull. Eq. Rep.* 1, which was a bill by the mortgagor to redeem, the court, upon an examination of the earlier English cases, held, that the complainant was not at liberty to redeem until he had paid, not only the amount intended to be secured by the instrument, which—in that case as in this—was declared to be a mortgage, but also all other sums due from

him to the mortgagee. Similar decisions were made in *Scripture vs. Johnson*, 3 *Con.*, 211 ; and *Ogle vs. Ship*, 1 *A. K. Marsh.* 287. These cases rest upon the principle "that he who seeks equity must do equity," and this principle may be forcibly applied to the case before us. The complainant was deprived of his real estate, and was without remedy at law, and though the bill is not strictly to redeem, it nevertheless seeks a recovery of the rents and proceeds of the sale of the mortgaged premises, and these a court of equity will not decree, except upon condition that the complainant will discharge his entire indebtedness to the mortgagee, as well that which is not, as that which is secured by the mortgage. This equitable principle has no application, however, where the mortgagee seeks a foreclosure in chancery, and hence, in such case, the mortgagor is permitted to redeem upon payment of the mortgage debt alone, no matter to what amount, on other accounts, he stands indebted to the mortgagee. And so where a subsequent mortgagee, or judgment creditor files a bill to redeem, he will be allowed to do so upon payment of the mortgage debt only. *Lee et al. vs. Stone et al.*, *supra.* Nor does this principle apply to a case like *Nolly vs. Rogers*, 22 *Ark.*, 227, where, on a bill by the beneficiary in a trust deed against the grantor, this court held, that "nothing but the demands provided for in the trust deed, ought to be, or could be charged upon the trust property," and that if the beneficiary had other demands, he should be required to prosecute them at law, or wherever an appropriate remedy could be administered. But if the grantor had brought his bill to redeem or disencumber his property, then, in that case as in this, the principle, that he who seeks equity must do equity, would have applied, and he would have been required to pay, not only the demands provided for in the trust deed, but all others due from him to the beneficiary.

So much of the decree as declares the conveyance of the Anthony House property a mortgage, will be affirmed, and the decree in all other respects, will be reversed and the cause re-

manded, with instructions to the court below to order an account between the parties, as herein above indicated.

Mr. Justice FAIRCHILD did not sit in this case.