Thomson, J.,
delivered the opinion of the court.
This is a proceeding to have a deed absolute upon its face adjudged to be a mortgage, and to compel a reconveyance. The deed was executed by C. C. Kellogg to Patrick Quinn on the 18th day of October, 1883, and conveyed one-fourth of the Humbolt mining claim, and one-fourth of the north end of the Belgian mining claim, in California mining district, Lake county. The action was commenced on the 18th day of November, 1891.
At the trial, Kellogg the plaintiff, testified that .on October 18,1883, he borrowed of the defendant, Quinn, $300, and gave him the deed to hold until the money was repaid; that it was understood that the deed should not he recorded ; that as evidence of the indebtedness he made and delivered to Quinn, together with the deed, his note for the $300 borrowed, with interest, due three months from date ; that he made payments from time to time, which were indorsed upon the note, and finally paid the note in full, and took it up and canceled it; that owing to other matters which were troubling him, he forgot about the deed; that he was reminded of *159 its existence by finding it upon an abstract from the record which he had occasion to procure; that upon the discovery he went to Quinn and told him of it, and how he had forgotten it, when Quinn said that he had forgotten it too; that there were several meetings between them in which a reconveyance was the subject of conversation ; that Quinn finally refused to convey unless Kellogg would give him $6,000; that Kellogg then had a deed prepared, and, together with a notary public, presented it to Quinn, demanding his signature, which Quinn refused; and that thereupon he commenced this suit. The plaintiff also testified that, at the time of the loan, the interest conveyed was worth $6,000 ; that he had been in possession of the interest all of the time, and in charge of the entire property, except perhaps in 188.3 and 1884; that the defendant never claimed or exercised any lights of ownership in the property; that the property was worked continuously since the loan; that improvements were placed upon it costing $10,500, of which, and also of all taxes assessed against it, he had paid his share; and that the deed was executed subject to an incumbrance of $1,000 on the interest conveyed, which he paid.
Quinn, in his own behalf, testified that he received the deed in payment for work which he had done upon the property, and that it was intended as an absolute conveyance to him. He denied the statements of Kellogg as to the consideration of the deed. He admitted a loan of $300 to Kellogg, but stated that it was made a long time afterwards, and had no connection with the deed. There was other evidence on both sides, more or less corroborative of the conflicting statements. The court, after hearing all of the testimony, found the facts to be with the plaintiff, and we are concluded by its finding.
It is objected to the complaint that it does not state facts sufficient to constitute a cause of action; but it is simply a narration of the facts as given by the plaintiff in his testimony. and, if these facts entitle him to relief, the complaint is sufficient. The plaintiff, as the court found, executed the *160 deed, and it was held by the defendant as security for the repayment of the sum of money borrowed from him by the plaintiff. It was therefore, although absolute on its face, in fact a mortgage; and in equity it is competent to show the real character of such an instrument by parol evidence. Such evidence does not have the effect to contradict or vary the writing. It is admitted merely to show the purpose for which the deed was given. Freeman v. Wilson, 51 Miss. 329; Peugh v. Davis, 96 U. S. 332; Anthony v. Anthony, 23 Ark. 479; Pierce v. Robinson, 13 Cal. 116; Beatty v. Brummett, 94 Ind. 76; Moore v. Wade, 8 Kans. 380.
The principal controversy in the case arises out of a plea of the statute of limitations. The answer avers that the cause of action, if any ever accrued to the plaintiff, accrued more than five years before the commencement of the suit, and was therefore barred by the statute. It appears that the debt, which the deed was given to secure, was paid — principal and interest — prior to July 1, 1884.
Defendant’s contention is, that by the transaction a result? ing trust was created; that the legal title to the premises was vested in the defendant for the benefit of the plaintiff; that plaintiff’s right of action to compel a reconveyance of the property accrued at the time the debt secured was paid; that the statute then commenced to run; and, that more than five years having elapsed between that time and the com- . mencement of this proceeding, the action was barred by the terms of section 13 of the Statute of Limitations. That section is in the following words :—
“ Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after.” General Statutes, 1888, § 2175.
We are of the opinion that the present case is not one contemplated by the statute, but, conceding for the moment that it is, the question to be decided is, “ When did the cause of action accrue to the plaintiff? ” The answer to this question *161 will determine whether the suit was commenced in time. Counsel very earnestly contend that it is unnecessary that the defendant should have denied or repudiated the trust; but that, on the contrary, the right to sue vested instantly upon the payment of the debt, and refer us to a number of authorities which it is claimed sustain that position. An examination of these authorities, or some of them, will therefore be proper for the purpose of seeing whether counsel’s reliance is well grounded.
In Hecht v. Slaney, 72 Cal. 363, Slaney had filed a petition in insolvency; afterwards he filed a petition to have certain real estate set apart to him as a homestead; no notice was given of the filing of the latter petition, or of the time for its hearing; and by an order of the court the property was set aside as prayed. Some years afterwards Hecht, a judgment creditor, filed his bill, alleging that the representations in the petition were false and fraudulent, and made for the purpose of defrauding creditors, and praying that Slaney be adjudged to hold the property in trust for his creditors, and that it be applied to the payment of his debts. The court held that as the trust originated in a wrong, the statute commenced to run at the time of the commission of the wrong; and that Hecht, having suffered the statutory limit to expire, was barred.
To the same effect is Howell v. Howell, 15 Wis. 55: A partner had bought land with partnership funds, without the consent of his copartner, and had the conveyance made to a third person who took it with knowledge of the facts. The court, holding that a cause of action accrued to the other partner immediately, says: — “ The trust in such cases originates in a fraud, which is in itself as complete and absolute á denial of the rights of the injured party as it is possible to have, and every day which passes without reparation of the injury is a continuation or repetition of it. William Howell might have commenced his action the moment the land was purchased.”
Further notice of the cases cited is unnecessary. There is none which, in its facts, approaches more nearly the present *162 case than the foregoing. The two cases reviewed deal with a class of trusts within which this, whatever else it may be, does not fall. If we class this as a trust, it results from the agreement or understanding of the parties, and is therefore what is known as a resulting trust; and counsel are correct in so distinguishing it. But the trusts considered in the foregoing cases did not arise out of any contract, either express or implied, between the parties. They arose from fraud committed by one party upon the other, and were what is termed constructive trusts. Where a person, clothed with some fiduciary character, wrongfully or fraudulently conducts a transaction so as to gain an advantage to himself over another person interested, the law converts him into a trustee, contrary to his intention and against his will, and a constructive trust arises.
Counsel’s position, in support' of which these cases are cited, is that the statute commenced to run, not when the defendant refused to make the conveyance, but when, by reason of payment of the note, the plaintiff had the right to demand it. But when, by an analysis of the cases, we reach the prin ciple which they establish, and apply it to the facts before us, we are forced to a directly contrary conclusion. Those cases, upon their own facts, hold that in order to set the statute in motion it was not necessary that the trustee should have denied or repudiated the trust; and the reason for so holding was that the trustee had already, by the very acts upon which the law founds such a trust, as effectually denied and repudiated it as it -was possible for him to do. Any further denial would have been superfluous, and could have added nothing to that already existing. The cases fix the time when the statute commenced to run as being the time when the wrong was committed. And as the wrong was, in itself, a repudiation of the trust, the statute therefore began at that repudiation. Let us apply this principle to the facts as found here, and see where it will lead us. There was no fraud in the original transaction. The trust grew out of the contract between the parties. By accepting the deed as se *163 curity for the money loaned, the defendant acknowledged the trust. He acknowledged it again when he received the money and surrendered the note. During the whole period, between the inception of the transaction and the final refusal of the defendant to execute the deed, although the plaintiff was in possession of the property, and he was out of possession, he never, by word or act, indicated that he claimed anything by virtue of the deed, inconsistent with its character as a mortgage. He did not execute a release and deliver it to the plaintiff, it is true; and, until demand was made upon him for that purpose, he was under no obligation, legal or moral, so to do. His acts and his silence equally affirmed the trust. A reconveyance was finally demanded of him, and then for the first time he attempted a denial and repudiation. His refusal to make the deed was the first appearance of a claim inconsistent with the trust. This was the only wrong in the history of the case which could set the statute in motion, and, in accordance with the doctrine of the very cases relied upon by the defendant, it was then, and not before, that the statute commenced to run. Not only are we sustained in this conclusion by the reasoning in the cases referred to, but the court in Howell v. Howell, supra, comes directly to our support. In the course of the opinion, Dixon, O. J., says : “ It follows that the cause of action set forth was barred in the lifetime of William Howell, unless as counsel supposed, it was necessary that there should have been a denial of the trust before the statute would begin to run. But that doctrine is applicable only to express or acknowledged trusts, where the trustee had afterwards repudiated the right of the cestui que trust, and set up a claim to the trust property in his own right, and not to those implied or equitable trusts which spring from the originally wrongful and fraudulent acts of the party to be charged, and which were never recognized or admitted by him.”
Therefore, accepting counsel’s theory that this was a trust to which the statute would apply, as the action was com *164 menced immediately after the refusal by the defendant to make the deed, it was not barred.
But we are disposed to rest our decision of the case upon other grounds. This is not an action to redeem. The defendant was never in possession of the mortgaged property, applying its rents and profits in payment of the debt, so as to make an accounting necessary. There was no uncertainty or dispute as to the amount which had been paid, so as to require an ascertainment of that for the purposes of redemption. The debt had been fully paid and the note which evidenced it canceled. The bill makes no allegations which .require an investigation to ascertain what if anything is still due, in order that the plaintiff, by payment of the balance, may redeem his property. It is simply a bill to cancel a mortgage which had already been satisfied. While the debt which a mortgage was given to secure remains unpaid, it is valid and efficacious for the purpose of the enforcement of the mortgagee’s remedy against the mortgaged property; but when the debt is fully paid the mortgage is defunct; it becomes null and void; it is useless in the hands of the mortgagee for any purpose; and as long as it is unreleased' upon the' record it remains a mere cloud upon the title of the mortgagor, to be removed, if necessary, in a proper proceeding for that purpose. The statute of limitations contemplates a loss by one party, on account of his delay, of some right or possession, which enures to the benefit of the opposite party; so that what one loses the other gains. Here, the defendant would gain nothing if the plaintiff’s action were barred, and he would lose nothing if it were not. It is immaterial whether the effect of the mortgage is to vest the legal title in the mortgagee, or leave it in the mortgagor. In either case, when the debt is paid the mortgage is, in equity, extinguished; and a reconveyance is necessary only for the purpose of making the record title of the mortgagor complete. We have no statute which limits the time within which a party in possession shall proceed to remove a cloud from his title, and as no lapse of time can restore vitality to a mortgage which has *165 been paid and extinguished, so no lapse of time will bar a mortgagor from proceeding to cause the fact of its extinguishment to appear upon the record.
The decree will be affirmed.

Affirmed.