HENRY CARPENTER *et al.*

*v.*

CHARLES PLAGGE.

*Opinion filed October 24, 1901.*

1. WAIVER—*when right to insist upon time as essence of the contract is waived.* The requirements that time shall be of the essence of a contract to re-pay money advanced to take up a certificate of sale, and the right to insist upon a forfeiture for failure to re-pay the money within the time fixed, are waived by an extension of the time of payment and subsequent acceptance of part of the money.

2. CONTRACTS—*entire interest of party presumed to have been expressed in written contract.* Where an interest of either party in property is expressed in a written contract, it will be presumed that the actual and entire interest is expressed.

3. SAME—*when contract is not a mortgage.* A contract made more than twelve months after the sale of property on a foreclosure, whereby one party agreed to advance money to take up the certificate of sale and hold it for his own benefit unless the other parties, the heirs of the mortgagor, should re-pay the amount advanced within a certain time, is not a mortgage, but a contract to convey.

4. LIMITATIONS—*when book account is not barred.* In an action on a book account which appears upon its face to be composed of mutual accounts between the plaintiff upon one side and the defendants upon the other, if some of the items are not barred by limitation the whole amount due upon the account is recoverable.

5. MORTGAGES—*right of mortgagee to have payment of subsequent advances.* If, after breach of condition, the mortgagee makes further advances under an oral agreement that the mortgage shall stand as security for them, a court of equity will not aid the mortgagor to redeem without requiring re-payment of such advances in addition to the amount due on the original indebtedness.

6. EQUITY—*he who seeks equity must do equity.* Where a party seeks in a court of equity to divest another of the legal title to land, the court may impose equitable terms for granting relief.

7. STRICT FORECLOSURE—*rule as to when strict foreclosure is allowable.* A strict foreclosure should only be decreed where it appears that the property is of less value than the mortgage debt, that the mortgagor is insolvent and the mortgagee willing to take the property in discharge of the debt.

8. SAME—*when court should not decree a strict foreclosure.* On a bill to redeem and a cross-bill to foreclose, if relief is granted on the cross-bill as well as the original bill the court should order a sale of the property, so as to permit the complainants to redeem in accordance with the statute.

. *Carpenter* v. *Plagge*, 93 Ill. App. 445, affirmed in part.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

The original bill in this cause was filed on May 5, 1897, by the appellants, Henry Carpenter and Daniel B. Carpenter, to redeem forty acres of land described as the north-east quarter of the south-east quarter of section 36, town 34, north, range 12, east of the third principal meridian, Will county, Illinois, from a certain master's deed thereto, held by appellee, Charles Plagge, upon the theory that said deed was held by appellee as a mortgage to secure a certain amount, advanced and expended by appellee under the terms of the written agreement hereinafter set forth. The prayer of the original bill was for an accounting to determine the amount due appellee under said agreement, and that, upon payment thereof, appellee might be required to make a deed vesting the title to said premises in appellants; and also for general relief.

On September 30, 1897, appellee filed his answer to the original bill.

Subsequently, the original bill was amended by inserting a statement, that it was filed by appellants "in their own behalf and on behalf of the other heirs of Daniel F. Carpenter, their father, deceased."

On November 16, 1898, appellee filed an amendment to his answer to the original bill; subsequently, on Febru-

ary 13, 1900, he filed an answer to the bill as amended, said amendment to the bill having been made on February 7, 1900.

On May 24, 1899, the appellee, Plagge, filed a cross-bill, which alleged the making of a subsequent verbal agreement by appellee and appellants, by the terms of which the deed in question was to be held by appellee as security, not only for the advances made as specified in said written agreement, but also for certain advances made and indebtedness incurred by appellants to appellee subsequently to the making of said master's deed and to the execution of said written agreement. The cross-bill prayed for an accounting, and for a decree, requiring appellants to pay to appellee the amounts due him under said written agreement, and also upon said subsequent advances and indebtedness; and that, upon such payment being made, appellee should be permitted to convey to appellants said premises, and, in default of such payment being made within a short time to be fixed by the court, appellee's title under said master's deed might be established and confirmed free from all rights of the defendants, etc.

On June 24, 1899, the appellants, Henry and Daniel B. Carpenter, filed an answer to the cross-bill, denying that the oral agreement therein set up was made between them and the appellee. This answer also denied that appellants owed any other indebtedness to the appellee than that set forth in the original written agreement, and that appellee had no rights to said premises except to enforce a lien thereon for the amount due him for the purchase price of the master's certificate hereinafter referred to.

The cause was referred to a master in chancery upon the issue made upon the original bill and answer thereto, and upon the issue made by the cross-bill and the answer thereto. The master was directed, by the order of reference, to take and report the evidence and his conclusions

of law and fact. Testimony was taken before the master, and he made a report to which objections and exceptions were filed.

On May 12, 1900, the court below made a decree, in which it was ordered and decreed, that the appellants should pay to appellee within 233 days from that date the sum of $2871.52, with interest thereon at five per cent per annum from February 19, 1900, the date of the filing of the master's report, to the date when said redemption is made, and to the clerk of the court all the costs of the suit, and that, upon said payment being made within the time above limited, appellee should convey said premises to the appellants; that, in default of such payment being made by appellants to appellee within said time, appellants should be barred and foreclosed of all right or equity in said premises, and that the appellee should thereafter hold the same in fee, free and clear of all right, title or interest of appellants therein; and that, in case redemption should not be made by appellants within said time, appellants should thereupon surrender possession of said premises to appellee, and, upon their failure so to do and the filing of an affidavit showing such facts to the clerk, and the filing by appellee with the clerk of the notes and other evidences of indebtedness, for which said premises were held as security, duly canceled, a writ of assistance should issue to the sheriff, directing him to put the appellee in possession of said premises.

From the decree so entered an appeal was taken to the Appellate Court, and the Appellate Court has affirmed the decree of the circuit court. The present appeal is prosecuted from the judgment of affirmance so entered by the Appellate Court.

The facts, as gathered from the pleadings, the proofs, the master's report, and the decree are substantially as follows:

On May 7, 1863, Daniel F. Carpenter, the father of appellants, was the owner in fee of said forty acres, the

same being his homestead, and on that date mortgaged said premises to one George W. Smith to secure the sum of $550.00. Thereafter on July 29, 1864, Daniel F. Carpenter died, leaving a widow and three sons, including appellants, and five daughters. After his death proceedings were brought to foreclose said mortgage, which resulted in a decree of foreclosure and sale for the balance of the indebtedness then due, amounting to $390.86. Under said decree the forty acres were sold for $465.58, and a master's certificate was issued therefor. The sale was made on October 8, 1877, and the master's certificate was dated as of that date. This certificate was assigned to one Henry B. Mason of Chicago.

On October 8, 1878, twelve months after the foreclosure sale and the issuance of the certificate of sale, the following agreement was entered into between the appellant, Henry Carpenter, and the appellee, Charles Plagge:

"This agreement made this 8th day of October, 1878, between Charles Plagge, of Monee, and Henry Carpenter, of Green Garden:

"*Witnesseth:* That said Plagge is to advance the money necessary to purchase the certificate of sale of (describing the forty acres) from Henry B. Mason, of Chicago, who now holds the same and to hold the same for his own benefit unless said Carpenter, or the heirs of Daniel F. Carpenter, deceased, or some or all of them shall, within fifteen months from such purchase, pay said Plagge the money advanced by him to make such purchase, with interest at ten per cent per annum from such purchase and upon such payment to said Plagge within said time—the time being the essence of this contract—said Plagge shall assign said certificate of sale to said Carpenter to be held by him for the benefit of such heirs, who shall contribute their fair and equal portion towards such payment, and if the full sum shall be paid by.Carpenter himself, then for his own benefit solely. CHAS. PLAGGE,
H. CARPENTER."

On February 10, 1879, a little more than a month after the expiration of the fifteen months allowed by the statute for redemption from the master's sale, a master's

deed conveying said forty acres was executed to appellee, and recorded. Nothing was paid by the appellants, or either of them, or any of the heirs of Daniel F. Carpenter within the fifteen months from October 8, 1878, specified in the agreement of that date. On January 8, 1880, upon the expiration of the fifteen months within which, by the terms of the written agreement, the money advanced by the appellee was to be paid, the appellee, by indorsement upon the agreement, extended the time for such payment from January 8, 1880, to January 8, 1881. On September 1, 1882, appellant, Daniel Carpenter, for himself and his brother, Henry Carpenter, paid on the agreement the sum of $427.61, and appellee indorsed on the agreement a receipt for said amount in the following words, to-wit: "Monee, Ill., Sept. 1, 1882.—Received on the within contract four hundred and twenty-seven dollars and sixty-one cents ($427.61)." Said sum of $427.61 was paid, not in money, but in corn, or grain, or farm produce. After September 1, 1882, nothing more was ever paid upon the contract or agreement of October 8, 1878, by appellants, or either of them, or by any of the heirs of Daniel F. Carpenter.

The appellee claims, that about September 1, 1882, when the payment aforesaid was made, a parol agreement was made between appellee and appellants, by which it was agreed that appellee should hold the title to the said forty acres, deeded to him by the master, as security for the amount advanced by him under the written agreement of October 8, 1878, and for all other indebtedness then due from appellants to appellee, or which might become due and owing from them to him thereafter, and that he should re-convey said forty acres to them upon the payment of all such indebtedness; and that, thereafter, appellee held said title under such new arrangement, and made advances to appellants upon the strength of the same, permitting appellants to remain

in possession of the premises, receiving the rents, issues and profits thereof.

Appellee was engaged in conducting a general store in Monee, and also a grain warehouse. Appellants, during the years following September 1, 1882, traded at his store, and obtained goods from him, and sold him the greater portion of the crops raised by them, not only from the forty acres in question, but from other lands rented by them.

On July 10, 1883, appellants and two of their sisters executed a note for $500.00 to the order of the appellee, payable in one year with interest at eight per cent per annum. This note was given for money advanced for appellants to take up a judgment lien against them held by one Herbert, whose attorney was W. W. Stevens, said lien amounting to over $1100.00.

On March 12, 1885, appellants executed to appellee another note for $500.00, due in one year after date, and drawing eight per cent interest. The money, for which this note was given, was advanced by appellee to appellants to pay off outstanding claims against them. About the time the present bill was filed there was also due from appellants to appellee, besides the notes above named and the interest thereon, and besides the balance due under the agreement of October 8, 1878, a certain amount upon book account, growing out of the transactions between appellants and appellee running through a number of years.

The master found, in his report, that the verbal agreement above mentioned was made between the appellee and appellants about September 1, 1882, and that the subsequent indebtedness was incurred under and by virtue of that agreement. The amount, found due by the master, was made up of the balance due under the original agreement of October 8, 1878, and also of the amounts due upon the two notes for $500.00 each above mentioned, and also for the amount due upon the book account.

These findings by the master were approved by the court, and decree was rendered accordingly. The decree overruled the finding of the master that, by reason of the failure of appellants to pay to appellee the amount stipulated in the agreement of October 8, 1878, within the time therein limited and within the time granted by the extension, the rights of appellants had become forfeited and determined. The decree also overruled the report of the master, so far as it allowed the amount due on a certain note, called the Robinson note, to be included in the amount to be paid by appellants on redemption.

The decree of the court found that the contract of October 8, 1878, between Henry Carpenter and appellee was not a mortgage, but simply an agreement to convey upon the payment of the sum stipulated therein; it also found that neither appellants, nor any of the heirs-at-law of Daniel F. Carpenter, complied with said agreement, and that thereby the same became subject to forfeiture by appellee, but that appellee never formally exercised the right of forfeiture, nor took any steps to terminate the rights of appellants. The decree also found that the verbal agreement, claimed by appellee to have been made about September 1, 1882, was made.

C. W. BROWN, for appellants.

HILL, HAVEN & HILL, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The amount, paid by appellee in order to purchase the master's certificate of sale under the written agreement of October 8, 1878, was $550.00. Appellants contend, that they are entitled to redeem the premises in question upon the payment to appellee of said sum of $550.00, less the sum of $427.61 paid thereon on September 1, 1882, together with interest. The contention of

the appellants is, that appellee held the master's certificate and the master's deed subsequently obtained thereon, as security for the payment of the amount advanced to purchase the certificate, and that the assignment to him of the certificate and the execution to him of the master's deed, constituted a mortgage. The circuit court in its final decree held, that the agreement of October 8, 1878, was not a mortgage, but merely a contract to convey upon the payment of the sum named in the agreement of October 8, 1878.

The first question, therefore, is, whether the written agreement of October 8, 1878, was a mortgage, or a contract to convey upon the payment of an agreed purchase price.

We lay no stress upon the fact, that appellee obtained a master's deed upon the certificate, as indicating any intention to defraud, or take advantage of, the appellants. Appellee was entitled to a master's deed by the terms of the certificate of sale at the expiration of the period of redemption. It is not contended that, if appellants had the rights claimed by them under the written agreement of October 8, 1878, they did not have the same rights after the execution of the deed. The existence of the contract was recognized by the extension of one year granted on January 8, 1880. Its further existence was recognized when the payment of $427.61 was made on September 1, 1882, and endorsed upon the contract. By these acts appellee evidently waived the requirement, that time should be of the essence of the contract, and waived the right to insist upon a forfeiture because of non-fulfillment within the original time fixed. Appellants paid nothing after September 1, 1882, upon the written agreement; and, as appellee's right to a master's deed would have expired five years after January 8, 1879, when the period of fifteen months for redemption ended, he surely was not bound to wait until his right to claim a deed was lost.

In this case, the instrument to be construed, which one side claims to be a mortgage, and the other to be a contract of purchase and re-sale, is in writing. It is not claimed, that any fraud was practiced by the appellee in order to obtain this contract; and where an interest of either party in the property is expressed in a written instrument, it will be presumed that the actual and entire interest is expressed. (*Kerting* v. *Hilton*, 152 Ill. 658).

In order to determine, whether an instrument like the one here in controversy is a mortgage, or a contract of purchase and re-sale, it is necessary to inquire whether any indebtedness existed at the time of the execution of the instrument. The appellee here held a master's certificate, which subsequently ripened into a master's deed conveying the title absolutely upon its face. No debt existed on October 8, 1878, from the appellants to the appellee. If an instrument is a mortgage, there must be some debt in existence, which the mortgage secures. (*Burgett* v. *Osborne*, 172 Ill. 227, and cases there cited). When the instrument of October 8, 1878, was executed, the twelve months, allowed by law to the appellants and to the other heirs of Daniel F. Carpenter, deceased, to redeem the forty acres from the foreclosure sale, had expired, or were about to expire. Upon the expiration of the statutory period of twelve months appellants had no interest in the property. During the three months after the expiration of the twelve months only judgment creditors could redeem. Inasmuch, therefore, as appellants had no interest in the property by reason of the expiration of the twelve months, there was no title in them which they could mortgage. (*Burgett* v. *Osborne*, *supra*). Appellee, by the terms of the contract, was to purchase the certificate of sale, and hold it for his own benefit; but an option was given to the appellants to re-purchase it by paying him the amount of purchase money, which he had advanced, within a certain time.

Counsel for appellants lays stress upon the use, in the agreement, of the word, "advance," and refers to authorities, which hold that, where money is stated to have been "advanced," it must be regarded as a loan to be repaid. (*Chase* v. *Ewing*, 51 Barb. 597; *Powder Co.* v. *Burkhardt*, 7 Otto, 110). There is nothing in the terms of the contract here to indicate, that appellee was to make an advance of money to appellants to purchase the certificate for them, but he was merely to advance his own money to purchase the certificate for himself.

Counsel for appellants also alludes to several circumstances, as indicating that the intention of the parties was to make the transaction a mortgage. One of these circumstances is, that the premises were worth much more in value than the amount advanced by appellee to purchase the certificate of sale. Other circumstances are, that appellants were allowed to remain in possession, and to offer the property for sale, and to pay the taxes thereon, and were granted extensions, and allowed to make a payment after the period named in the contract had expired. As the agreement of the parties was embodied in writing, these outside circumstances could not be allowed to vary its terms; and, in addition to this, the acts of ownership, exercised by the appellants, were consistent with, and could have been performed under, the subsequent arrangement that was made between the parties.

We are inclined to the opinion that the circuit court decided correctly in holding that the original agreement of October 8, 1878, was not a mortgage, but a contract to convey upon payment of an agreed purchase price. But we are also inclined to think that it makes very little difference whether this construction of the original agreement is the proper one or not in view of the verbal arrangement subsequently made. Appellants contend that the original instrument was a mortgage; and appellee admits that, after September 1, 1882, when the new oral

agreement is alleged to have been made, he held the master's deed as a security for the indebtedness due both under the original agreement of October 8, 1878, and under the new oral agreement of September 1, 1882; and he thereby concedes that it was a mortgage after the latter date. If the oral agreement, claimed to have been made on or about September 1, 1882, was actually made and was a valid agreement, it supplanted the former written agreement; and inasmuch as thereafter the appellee held the master's deed as security for all the indebtedness of appellants to him, it would be immaterial whether, prior to that date, the agreement of October 8, 1878, was a mortgage or not.

*Second*—The next question is whether, on or about September 1, 1882, an oral agreement was made, by the terms of which the title held by appellee was to be security for the indebtedness existing prior to that time, and also for the indebtedness which might accrue and did accrue after that time.

The master in his report found that the oral agreement, contended for by appellee, was actually made, and that, in pursuance of it, subsequent advances were made by appellee to appellants; and that subsequent indebtedness was incurred by appellants to appellee upon the security of the master's deed held by appellee. The circuit court in its decree confirmed the master's finding upon this question. After a careful examination, we are of the opinion that the evidence sustains the finding of the master and the decree of the court. The testimony of appellee and of William Plagge sustains appellee's contention that there was such an agreement. This testimony is confirmed by the fact that appellants were insolvent, owning substantially no interest in any real estate, and having given chattel mortgages upon their personal property. The evidence is clear that, from time to time after September 1, 1882, appellee advanced money to appellants to enable them to pay their debts and re-

lieve themselves from pressing liability. It is unnatural to suppose that appellee would do this, unless he was secured in some way, and there was no other way, in which he could be secured, unless the master's deed held by him was so held as such security. Again, W. W. Stevens, the attorney of one Herbert who held a judgment lien for $1100.00 against appellants, and settled the same with them at fifty cents on the dollar by accepting that amount advanced by appellee for appellants, swears that, in the course of the negotiations, appellants admitted that appellee was making advances to them for the payment of their debts upon the security of the land; and, while Stevens may have been mistaken in the description of the forty acres embraced in the deed, the evidence does not show, that appellee held any deed, or other security, upon any other tract of forty acres than that conveyed by the master's deed.

*Third*—Appellants do not deny that they owed the debts to appellee alleged by him to have been incurred by them after September 1, 1882. But, in an amendment to the answer filed by them to the appellee's cross-bill, they set up, that these subsequently incurred debts were barred by the Statute of Limitations, although they do not plead the Statute of Limitations to the indebtedness, alleged to have been created under the agreement of October 8, 1878. The subsequent debts were not barred by the Statute of Limitations. These debts consisted of two notes, one of which was due in 1884 and the other in 1885, and also of a book account. The bill in the present case was filed in May, 1897. Payments were made upon the notes as late as May, 1889. Ten years from the dates of such payments did not expire until 1899, after the present bill was filed. As to the book account, it appears from its face that there were mutual accounts between appellee on the one side and appellants on the other, and that there are some items in the account, which are within the period of limitation of five years prior to the filing

of the present bill.  This being so, the whole amount, due upon book account, is taken out of the Statute of Limitations.  (*Miller* v. *Cinnamon*, 168 Ill. 447; *O'Brien* v. *Sexton*; 140 id. 517).

*Fourth*—It is further contended by appellants, that the indebtedness, incurred after September 1, 1882, was not secured by the original agreement of October 8, 1878, claimed by appellants to be a mortgage; and that, this being so, appellee, as mortgagee, cannot tack to his mortgage debts subsequently incurred, and require their payment by appellants, as mortgagors, as a condition to their right to redeem.  This doctrine is sustained by many respectable authorities.  (1 Jones on Mortgages,—4th ed.—sec. 360, and cases in note 4).

Other authorities, however, hold to the contrary, and the substance of them has been stated as follows: "If a person, entitled to redeem, goes into equity for that purpose, and he owes the mortgagee other sums than that secured by the mortgage, relief will be granted only on the payment of the total amount of his indebtedness, in accordance with the maxim that 'he who asks equity must do equity,' and to prevent circuity of action."  (11 Am. & Eng. Ency. of Law,—2d ed.—p. 230; *Anthony* v. *Anthony*, 23 Ark. 479; *Scripture* v. *Johnson*, 3 Conn. 211; *Rowan* v. *Sharps' Rifle Manf. Co.* 33 id. 28; *Coombs* v. *Jordan*, 3 Bland. 330; *Chase* v. *McDonald*, 7 Har. & J. 160; *Lee* v. *Stone*, 5 Gill & J. 1; *Gelston* v. *Thompson*, 29 Md. 595; *Brown* v. *Stewart*, 56 id. 431; *Reed* v. *Lansdale*, 1 Hard. 8; *Walling* v. *Aiken*, 13 S. C. Eq. 1; *Ogle* v. *Ship*, 1 A. K. Marsh. 211; *McClanachan* v. *Siter*, 2 Gratt. 280).  This doctrine, however, is, under the authorities last above referred to, limited to cases where the mortgagee is invested with the legal title to the property, and makes further advances, in addition to the original debt secured, upon the credit of the land to which the title· is held; and where the title held is made available to secure the further advances by a legal contract between the parties; and where the rights of

subsequent encumbrancers, or persons who have acquired junior liens are not prejudiced thereby. Debts created, or advances made to a mortgagor subsequent to the mortgage, cannot be tacked to the mortgage debt to the prejudice of third persons, who have acquired junior liens upon the mortgaged property. That the doctrine, however, is applicable as between the mortgagee and the mortgagor is established by the foregoing authorities.

Some of the cases, which hold that, after an actual payment of the debt secured, the mortgage cannot be revived by an oral agreement to keep it in force to secure a distinct and independent debt, at the same time hold that, where the mortgagor seeks the aid of a court of equity to enforce for himself the right of redemption, equity will require him to perform such oral agreement before relief will be granted. If, after the breach of the condition of a mortgage of land, further advancements are made by the mortgagee to the mortgagor, under an oral agreement that the mortgage shall stand as security for them, a court of equity will not aid the mortgagor or one who has no higher equity than the mortgagor to redeem without allowing for such advancements, in addition to the amount named in the mortgage. The doctrine has otherwise been stated as follows: "If the mortgagee makes subsequent advances to the mortgagor * * * under an agreement that the mortgage shall stand as security therefor, neither the mortgagor, nor any one without equities superior to his, will be permitted to redeem without paying the amount of such advances in addition to the amount named in the mortgage." (11 Am. & Eng. Ency. of Law,—2d ed.—p. 230, note 4; *Joslyn* v. *Wyman*, 5 Allen, 62; *Stone* v. *Lane*, 10 id. 74).

In *Upton* v. *National Bank of South Reading*, 120 Mass. 156, the Supreme Court of Massachusetts, in discussing this subject, say: "The objection, that such an oral agreement could not be put in evidence, cannot be maintained. While an indebtedness, other than that for which the

mortgage was given, cannot legally be attached to such mortgage, yet it is competent, in answer to a bill in equity to redeem a mortgage, for the defendant to show that it would be inequitable to allow the complainant to do so upon payment of the amount apparently due thereon, inasmuch as the defendant had, for valuable consideration, orally agreed that it should not thus be discharged, but should remain as security for other debts." The court proceed to say, however, that where a question of title arises between the defendant and a subsequent mortgagee, attaching creditor or *bona fide* purchaser, the defendant can only enforce the mortgage for that portion of the debt actually due. (*Williamson* v. *Downs*, 34 Miss. 402). The doctrine thus announced appears to have been endorsed by this court in the case of *Brown* v. *Gaffney*, 32 Ill. 251, in connection with the same case as reported in 28 Ill. 149. (See, also, *Edwards* v. *Dwight*, 68 Ala. 391).

If, therefore, the enforcement of the security in question for the subsequent indebtedness of appellants to appellee, under the oral agreement already set forth, is to be regarded as a tacking by the mortgagee to his mortgage of advances subsequently made, the defense of the appellants to the cross-bill upon that ground is not well taken. No maxim of equity is better settled than that he, who asks equity, must do equity; and, where a party seeks in a court of equity to divest another of the legal title to land, the court may impose equitable terms, on which relief will be granted. (*Galbraith* v. *Tracy*, 153 Ill. 54; *St. Patrick's Catholic Church* v. *Daly*, 116 id. 76; *DeWalsh* v. *Braman*, 160 id. 415).

*Fifth*—Appellants, however, insist that the equitable title to the property in controversy, under the agreement of October 8, 1878, was not in either or both of the appellants alone, but in the heirs of Daniel F. Carpenter, and that, upon this ground, it would be unjust to require the debts of appellants to be paid, in order to secure a re-

demption, which is alleged to be for the benefit of all of such heirs. This contention cannot be sustained, because the rights of the heirs were extinguished by their failure to redeem from the master's sale within the time limited by law, and by the subsequent issue of the master's deed to appellee. In addition to this, the agreement itself upon its face provides, that appellee was to hold the certificate of sale for his own benefit, unless Henry Carpenter, or the heirs of Daniel F. Carpenter, deceased, or some, or all of them, should, within fifteen months from such purchase, pay appellee the money advanced, etc. The payment made on September 1, 1882, was made with the money of the appellants alone, and not with any money belonging to all the heirs of Daniel F. Carpenter. So far as appellee was concerned, he had a right, under the terms of the agreement, to deal with Henry Carpenter, or with him and his brother, Daniel B. Carpenter, and not necessarily with all the heirs.

- *Sixth*—We are unable to see what the appellants are to gain by resisting the enforcement of the security for the payment of their subsequent indebtedness to appellee. If appellee's cross-bill is dismissed for want of equity, or on account of the absence of any legal right to obtain the relief thereby asked, then the case stands upon the issue made by the original bill of the appellants and the answer of appellee and the amendment to such answer. By the original bill appellants seek to redeem the property upon the payment only of what may be due under the original agreement of October 8, 1878. The last payment made upon that agreement by appellants was made on September 1, 1882. In his amended answer to the original bill appellee pleads *laches* and the Statute of Limitations. More than fourteen years elapsed after September 1, 1882, before the original bill to redeem was filed in this case on May 7, 1897. It is clear, therefore, that, if the agreement of October 8, 1878, was a mortgage, the debt secured thereby was barred by the Statute of

Limitations when the original bill herein was filed; and the right to foreclose the agreement, as a mortgage for the security of that debt, was also barred by the statute. The right to foreclose and the right to redeem are reciprocal rights; and, if one is gone, then the other is lost. "If the Statute of Limitations then barred a foreclosure, it, for the same reason, barred a redemption from the deed, regarded as a mortgage, for the right to redeem and the right to foreclose are reciprocal, and when the one is barred, the other is barred." (*Green* v. *Capps*, 142 Ill. 286; *Walker* v. *Warner*, 179 id. 16; *Jackson* v. *Lynch*, 129 id. 72; *Locke* v. *Caldwell*, 91 id. 417).

Appellee expresses a willingness in his cross-bill to deed the property back to appellants upon their payment to him of the total indebtedness found by the master to be due to him.    His offer, however, to allow the master's deed to stand as security for the total indebtedness must be taken as it is made, and it cannot be regarded as an admission on his part, that the deed may be enforced as a security for the original indebtedness, if it does not stand also as security for the subsequent indebtedness.

*Seventh*—We are of the opinion, however, that the form of the decree entered by the trial court was not correct. The decree does not provide for the sale of the premises for the payment of the amount due to the appellee, but provides that, in case redemption is not made within the time limited, the title of appellee to the property shall become absolute.  This amounts, in substance, to a strict foreclosure of what appellee, really and in effect, admits to be a mortgage to secure the payment of the original and subsequent indebtedness together.  The general rule in this State is, that a strict foreclosure will only be decreed, where it appears that the property is of less value than the debt for which it is mortgaged, and the mortgagor is insolvent, and the mortgagee is willing to take the property in discharge of his debt.  (*Farrell* v. *Parlier*, 50 Ill. 274; *Boyer* v. *Boyer*, 89 id. 447; *Illinois Starch Co.* v.

*Ottawa Hydraulic Co.* 125 id. 237). In the case at bar, the proof shows that the premises are worth more than the amount of the indebtedness found to be due to appellee.

The ordinary decree, on allowing parties to redeem from a mortgage, is that the complainant be allowed to redeem the premises, upon payment of the sum found to be due within a reasonable time to be fixed therein together with the costs, and directing the defendant to discharge the mortgage—or to convey the property to the complainant, if the defendant holds a deed instead of a mortgage as security—on the payment of the money, and that, in default of such payment within the time specified, the bill be dismissed. (*Decker* v. *Patton*, 120 Ill. 464; *DeWalsh* v. *Braman*, 160 id. 415; *Chicago and Calumet Rolling Mill Co.* v. *Scully*, 141 id. 408; *Bremer* v. *Canal and Dock Co.* 127 id. 464; *Harper* v. *Ely*, 56 id. 179). But this is not merely a bill to redeem; it is also a bill to foreclose. While the original bill of the appellants seeks redemption, the cross-bill of the appellee seeks a foreclosure of the master's deed, regarded as a mortgage, for the security of the total indebtedness. The cause came on to be heard upon the making of the final decree, and relief was granted, not merely upon the original bill, but upon the cross-bill also. As the main relief granted is the foreclosure of a mortgage, the court below should have ordered a sale of the property, so as to permit the appellants to redeem the same in accordance with the provisions of the statute.

In all other respects than the one last mentioned as to the form of the decree, the decree of the circuit court is affirmed. In view, however, of the defect in the form of the decree, the decree is reversed, and the cause is remanded to the circuit court with directions to modify and change its decree in the respect indicated. Each party will pay one-half of the costs in this court.

*Partly affirmed and remanded with directions.*