Johnson & Goodrich vs. Anderson, assignee.

———————

JOHNSON & GOODRICH vs. ANDERSON, assignee.

1. PAYMENT: *Appropriation of.*
   A payment on a running account, in the absence of appropriation, should be applied to the earliest item of debt until the whole is extinguished.

2. SAME: *Election, Civil law, etc.*
   By the common law, in the absence of instructions from the debtor, the creditor may elect to which of two or more debts he will apply it; by the civil law it will be imputed to the most onerous debt; the doctrine of election does not apply unless there are separate debts.

3. MORTGAGE: *Cannot be enlarged by parol.*
   A subsequent parol agreement that subsequent advances shall be covered by a mortgage is inoperative.

APPEAL from *Drew* Circuit Court in Chancery.

Hon. A. C. JONES, Special Judge.

*S. R. Cockrell,* for appellants.

A mortgage may be given in a specific sum to secure future advances, and future balances on settlements. *Bank, etc.,* v. *Finch,* 3 Barb. Ch. Rpts., 303, 297; *Shirras* v. *Caig,* 7 Cranch. U. S., 50; *McK.* v. *Babcock,* 26 N. Y., 378; *Langston* v. *McKinney,* 16 Johns., 105; *Truscott* v. *King,* 2 Seld., 157; 1 Hill. Mort., p. 206, secs. 58 *et seq.,* and parol testimony is admissible to show the intent. *Cases supra,* and 2 Wash. R. Property, 144; *Hurd* v. *Robinson,* 11 Ohio St., 232; 2 Hill. Mort., p. 303; sec. 18; *Johnson* v. *Clark,* 5 Ark., 321; 7 ib., 305; 18 ib., 49.

Appellee is not a purchaser without notice. Burrell As., 484, and authorities cited.

The answer admits the mortgage was made to secure future advances, which was alleged in the bill. This is conclusive. *Wieder* v. *Clark,* 27 Ill., 251.

The parol agreement that the mortgage should cover subsequent advances was valid. 2 Wash. R. P., 143; *Jocelyn* v. *Wyman,* 5 Allen, 62; *Stone* v. *Laen,* 10 Allen, 74. Surely this would be true of the insurance policies. 2 Hill. Mort., 286, sec. 56; *James* v. *Johnson,* 6 Johns'. Ch. Repts.

*U. M. Rose and James A. Jackson,* for appellees.

The mortgage could not be held as a security for future debts. *Hooper ex parte,* 19 Vesey, 477; *Walker* v. *Snediker,* 1 Hoff. Ch., 146; *Tarscott* v. *King,* 2 Seld., 161; Kent. 4th Com., 176; *Whiteney* v. *Beebe,* 12 Ark., 581; *Nolly* v. *Rogers,* 22 Ark., 230; *Jordan* v. *Fenno,* 13 id., 598; 3 Parsons on Cont., 13; Benj. on Sales, 148; *Peltier* v. *Collins,* 3 Wend., 459.

Credits are to be applied in order of time to the oldest debts. 1 Story's Eq. Ju., sec. 459; 2 Parsons Cont., 633, and this is the rule whether the first items are secured or not. 44 Me., 121;

28 Vt., 498; 31 Me., 497; 10 Burt., 189; 3 Denio, 293; 22 Me., 138; 9 Watts, 386; 9 Wheaton, 737; 10 Conn., 175. In Louisiana to the most onerous debt. *Forstall* v. *Blanchard*, 12 La., 1.

There can be no election unless there be two or more debts existing at the time of payment. 5 Gratt., 357; 3 Sumner, 112; 41 N. H., 166; 31 Vt., 701; 5 Leigh, 329.

The creditor cannot make or change appropriations after controversy. 9 Wheaton, 720, 737; 12 Vt., 246, 249; 10 Conn., 183; 31 Vt., 706; 31 Me., 500.

Nor after presentation and approval of the accounts. Notes to Clayton's case in Lead. Case in Mer. and Mar. law, p. 22; 11 Barb., 80; 3 Denio, 291; 2d Barn & Cress, 65; 2 Wash. C. C., 47; 5 Watts, 544, 545. See also in point here. *Harrison* v. *Johnson*, 27 Ala., 445; Clayton's case, 1 Mer., 608; 2 B. & A., 39; 2 Brod. & Bing., 70; Story's Eq., sec. 459.

The account books of appellants are conclusive against themselves. 5 Denio, 470.

WALKER, J. :

Anderson, as the assignee of Samuel F. Arnett, filed his bill of complaint in the Drew Circuit Court, to enjoin the sale of certain real estate, before then mortgaged by Arnett to Johnson & Goodrich, to secure the payment of certain notes which he alleges have been paid.

Upon the state of case made by the pleadings and proofs, the court below perpetually enjoined the sale of the lands so mortgaged, from which defendants appealed.

It is alleged in the bill, that, on the 27th April, 1871, Arnett executed to Johnson & Goodrich four notes for $5,000 each, payable, respectively, on the first days of November and December, 1871, and the 1st and 15th of January, 1872, with eight per cent. from maturity. That on the same day the notes were executed, Arnett executed to Johnson & Goodrich a mortgage upon

several tracts of land and lots of land, to secure the payment of the notes.

That a subsequent mortgage was executed, to release one of the lots embraced in the first mortgage and to substitute other lands in its place.

That in order to pay off the notes, Arnett, in September, 1871, and at other times, shipped to defendants ninety-five bales of cotton, the nett proceeds of which was $7,782.46. That he also transferred three life policies on his own life for $5,000 each. That Arnett soon after died, and that Johnson & Goodrich collected and appropriated this money, which, with the proceeds of the cotton, amounted to the sum of $22,782.46, which paid and more than paid, the notes so executed, for the payment of which the mortgage was executed.

Arnett, before his death, assigned all of his estate to Anderson to pay his debts.

The answer of the defendants does not controvert the fact of the execution of the notes, the mortgage given to secure the payment of them, or that the amount of money was received upon the cotton shipped and upon the life policies. But the defendants insist that there was an open account outstanding before the execution of the mortgage, and kept up until 7th May, 1873. That no direction was given by Arnett to the defendants as to the disposition of the sums received, and they were all duly credited on the general account, which, on the 7th May, 1873, left a balance due from Arnett to defendants of $3,581.65. Defendants make an exhibit of an account stated, in which this balance appears due, and say that the account was shown to Arnett in his lifetime, and that he did not question its correctness.

The real question at issue is as to the proper application of the payments. If applied to the extinguishment of the mortgage debts, then the mortgage is satisfied and the property mortgaged

is released. And if a balance should be found due defendants, they must seek satisfaction against the estate conveyed in trust, or against the estate of Arnett in the hands of his administrator. If not, and provision was made in the mortgage for its payment, the mortgage property should be held liable for the payment of the balance due defendants.

It appears that between the year 1870 and the 26th April, 1871, the defendants, cotton factors, of the city of New Orleans, had opened an account with Arnett, a merchant of Drew county, Arkansas, and, as stated by defendants in their, answer, and as appears from the evidence, there was, on the 27th April, 1871, a balance due from Arnett to defendants of $19,430.66. It was at this time that Arnett executed to defendants his four notes for $5,000 each, and also executed to defendants a mortgage upon real estate to secure the payment of the notes. No reference is made in the deed of mortgage to any other indebtedness, none to future indebtedness or advancements. The notes are set forth in the deed, and the express conditions are that when the notes and interest are paid, the deed shall be inoperative.

Whether the notes were given to secure the payment of the balance then due, does not appear. It may be observed that the notes were only for a few hundred dollars more than the balance then due defendants, and such may have been intended.

It is averred in the bill, and admitted in the answer, that, at the time the notes were executed, Arnett assigned to defendants three life insurance policies, of $5000 each, which were paid, but not until after the notes had matured, and that in September, 1871, and thereafter Arnett shipped to defendants cotton, which was sold for the net sum of $7782.46—with the life policies making a total payment of $22,782.46.

Plaintiff says this money was paid in satisfaction of the notes; that it was enough, and more than enough, for that purpose.

Defendants say that this amount was placed to Arnett's credit upon his general indebtedness.

In the absence of any instructions as to the application of the money as a credit, the rule in the case of running accounts, such as defendants assert in their answer to have existed, and such as the proof shows to have existed, is, that when there are various items of debt· on one side, and of credits on the other, accruing at different times, and no special appropriation of the payments is made by either party, the successive payments or credits are to be applied to the discharge of the items of debt, in the order of time in which they stand in the account, or, in other words, each item of payment or credit is applied in extinguishment of the earliest items of debt standing in the account, until the whole payment or credit is exhausted. 1 Story Equity, sec. 459; 2 Parsons Cont., 633.

If this was properly a question of election of payment of different debts, then, in the absence of instructions as to how the credit should be applied, the creditor could, under the common law rule, have applied the payment to the one or the other debt at pleasure. There can be no election unless there are more debts than one. *Law* v. *Southerland*, 5 Gratt., 357.

The rule under the civil law, which was in force in Louisiana, where this debt was payable, is, that payment is, in the absence of instructions, to be made on the debt most onerous to the debtor. *Forstall* v. *Blanchard*, 12 La., 1. Under this rule the mortgage debt, being at interest, should have been first extinguished.

The defendants rely upon proof to show that the payments were applied to the general account with the knowledge and approval of Arnett. Upon this point the evidence conduces to prove that as early as 1870, Arnett entered into an agreement with defendants to ship cotton to them as cotton factors; that witness was cashier of defendants at New Orleans, and was ordered by defendants and Arnett to keep the accounts in the name

of S. F. Arnett, and to place all cotton received from Arnett, or White and Arnett, to the credit of Arnett alone.

The first account current was rendered to Arnett in the month of April, 1871. He then owed a little over $19,000, as shown by the first account current. At that time, in order to secure Johnson and Goodrich for his then indebtedness, he executed a mortgage, and also assigned to defendants three policies of life insurance for $5000 each on his own life. Arnett examined the first and second accounts current—the second was in August, 1871—and made no objection.

Arnett was in the city in the spring of 1872. Witness says: "I rendered him an account then, as I had done in the fall of 1871; he was in the city a month or two before his death, and then gave instructions, or remarked that the above mortgage and life insurance policies should be held against his account, which he had failed to cover or meet by shipments of cotton. He remarked that if he did not ship sufficient cotton to cover his account, his life insurance policy, and the mortgage on his property, would amply cover the advances made, or indebtedness due the defendants. Advances were made, after the maturity of the mortgage notes, to Arnett by defendants, because they considered the mortgage and life policies sufficient security in their hands; at least believed so, because Arnett represented that they should be secured for such advances, the mortgage having been executed and assigned for such purpose.

Arnett said that he was satisfied with the accounts rendered in April, 1871; and August, 1871. When in the city in February or March, 1872, he made no objection to the account.

This is substantially the evidence with regard to the manner of keeping the accounts. The first account was rendered before the mortgage was executed, and, of course, can have no bearing

upon the question of credits, and that in August, 1871, was rendered before the credits were given for the policies and the cotton shipped, or even if such had not been the case, the manner of keeping the accounts was not by any means inconsistent with the liquidation of the mortgage debt by the credits as entered. Take all that the witness deposed together, and we think that parties understood the payments which had been made went to the liquidation of the notes, for the payment of which the mortgage was given.

The evidence is, that on April 22d, 1871, Arnett was in New Orleans; his account was then made out and presented to him ; the amount due was $19,430.66, or, as witness stated, was over $19,000 ; that Arnett, in order to secure defendants for the amount of his indebtedness, executed the mortgage and assigned the policies of insurance ; that witness heard Arnett remark, that if he failed to ship cotton to cover his account, the mortgage and the policies would amply cover the advances made, and that advances were made after the notes were executed. Nothing is said about the debt, for the payment of which the notes were executed, remaining unpaid, but the expectation and belief were that the mortgage would hold good as an indemnity for subsequent advancements made upon the faith that they were secured by the mortgage.

If the mortgage had been executed, as well to secure the payment of future advancements, as for the payment of the notes, the expectations of the defendants might have been realized, but this they failed to do, and no parol declarations, as to what was supposed or intended to be its effect, can come in aid of this fatal defect.

It is true that defendants, in their answer, assume that the deed was executed for the purpose of covering a balance that might be found due on final settlement, but there is nothing in the deed to sustain such a presumption.

The estate mortgaged is only charged with the payment of the debt, to secure which the deed is executed. In Hooper, *ex parte*, 19 Vesey, 477, where an attempt was made to extend the mortgage lien, so as to protect a debt not expressly provided for, Lord Eldon said: "There never was a case where a man having taken a mortgage by a legal conveyance, was afterwards permitted to hold the estate as further charged, not by a legal contract, but by inference from the possession of the deed."

In *Walker* v. *Snediker*, 1 Hoff. Chy. 146, the court said: "It is certain that a mortgage cannot be rendered available for future liabilities by subsequent parol agreement."

Where a deed of trust has been executed to indemnify a party against a specific liability, the amount of indemnity thus designed to be secured cannot be reduced by proof of and other distinct claims against the *cestui que trust*. *Nolly* v. *Rogers*, 22 Ark., 227.

The security afforded in a deed of trust or mortgage only extends to debts set forth in the deed. *Whiting* v. *Beebe*, 12 Ark., 428.

In the case of *Harrison & Robinson* v. *Johnson*, 27 Ala., 445, a question much like the one we are considering, arose. An account current was kept, in which part of the indebtedness was claimed to have been extinguished by payments. The Circuit Court gave the following instruction to the jury: "If the plaintiffs were commission merchants of Friend, and as such kept a general running account with him, and entered the notes on both sides of his account as above stated, and rendered an account to him on the 2nd of April, 1853, showing a balance against him of $5,750 and that Friend afterwards made said payments of $2,882 and $2,680 without directing their application, then the plaintiff had the right to make the application of them, and that if they failed to make any application of said payments, but entered them generally to the credit of Friend on the general account current,

*Vol. xxx.—48.*

which included these notes, then the jury must apply said payments first to the aforesaid balances rendered by plaintiffs to said Friend, and plaintiffs were entitled to cover the difference between the amount of said balance $5,750 and the amount of said payments, after making an accurate computation of interest." Goldthwaite, Judge, when considering the correctness of this instruction, said: "The evidence shows that the appellants were the factors and commission merchants of Friend, and that there was a running account between them, * *· * and in the absence of any application of the payments by the parties, the law applies them to the charges, in the order of time in which they accrue, without reference to the fact that one item may be better secured than another, * * * upon the principle that such an appropriation is most consonant with the instruction of the parties."

Conceding the facts to be that the account ˙kept by defendants was a running account, in which balances due were brought forward, and that Arnett was apprised of the fact, and did not object to the manner of keeping the accounts; still, if the credits were applied as they should have been, in the absence of instructions, (and it is not claimed by the answer that any were given) to the payment of the debts in the order and time stated in the account, the notes given to secure the payment of the old indebtedness were paid.

By reference to the account current, it will be seen that within less than two months after the execution of the notes, two of them, or $10,000, are charged against Arnett, and credited to him less discount of $137.09 as of the same date. Here then at the outset was a settlement of two of the notes, less the $137.09. In September 18th, 1871, another of these notes of $5,000 is charged, which sums with the $7,782.46 greatly exceed the amount of the notes, without taking into account various other

Johnson & Goodrich vs. Anderson, assignee.

payments made in 1871, and the $15,000, less expenses, upon policies of insurance received in June, 1872.

The appropriation of the insurance money was made after the death of Arnett, and, of course, without his sanction. Independent of this it has not escaped our notice that the interest account, as well as a charge for damages alleged to have been sustained by reason of the failure of Arnett to ship as much cotton as by the terms of his contract of 1870, he had agreed to ship annually, was not brought up and charged until after Arnett's death, the latter item amounting alone to $955.46, when all considered would leave but a very small balance due upon the general account.

There was, therefore, no mortgage debt due, if indeed any debt whatever.

There is no claim in the answer that the credits were placed by the direction of Arnett. The most that can be drawn from it is, that he made no objection to the manner in which the account was kept, and therefore all of the evidence tending to prove such direction on the part of Arnett is outside of the case made by plaintiffs, and there is no margin within the state of case made by the pleadings upon which it can rest.

If we take the case as presented by the defendants, and the evidence introduced by themselves, it is apparent that in point of fact the mortgage debts were paid, but that after such payments advances were made to Arnett, which it is claimed were intended to be secured and covered by the mortgage, as there were no provisions made in the deed which could cover such subsequent indebtedness, and which could be aided by a parol agreement to that effect, we must hold the lands mortgaged not bound for such advancements. That as the mortgaged debts were paid, the lands mortgaged were no longer encumbered, and that the sale of the lands for the payment of a balance of indebtedness upon the account stated, was properly enjoined.

Let the decree of the Drew Circuit Court be in all things affirmed.