# Edwards *v.* Dwight.

*Bill in Equity to foreclose Mortgage.*

1. *Mortgage; whether debt secured by mortgage can be enlarged by parol.*— "There are two cogent reasons, founded in public policy, which would cause us to hesitate long before declaring, that when a mortgage security is executed to secure a debt of defined amount or special description, parol testimony can be let in to enlarge the amount or to tack to the mortgage another and different debt, whether sought to be done under an alleged contemporaneous, or subsequent agreement. The reasons are, *first:* It is of doubtful and dangerous policy to allow parties to add in this way a stipulation to a solemn written contract; *second:* Such practice would unduly expose the mortgagor to the power and oppression of the mortgagee." But this question is not decided, as the proof fails to show that any such agreement was made.

2. *Same; payment.*—This being a bill to foreclose a mortgage, and the proof showing that the debt secured by the mortgage had been paid, the bill was dismissed by this court, without remandment.

APPEAL from Perry Chancery Court.
Heard before Hon. CHARLES TURNER.
The facts are stated in the opinion.

JNO. F. VARY, for appellant.

LAPSLEY & NELSON, *contra*.

STONE, J.—The present suit is by Dwight, transferee of Wm. T. and Joseph C. Airy, and seeks to foreclose a mortgage on lands, executed by N. S. Edwards and wife, bearing date, May 3rd, 1869. The terms of the note are: " On or before the first day of October next we promise to pay W. T. & J. C. Airy or bearer the sum of three hundred and fifty dollars, for value received, advances to make a crop the present year. [Signed] N. S. Edwards, E. P. Edwards." The mortgage conveys 280 acres of land, some hogs and cattle, and " cotton, corn and fodder crop, that will be raised, grown or cultivated by us on the said land the present year." The mortgage recites, that the mortgagors are indebted to the said payees "in the sum of three hundred and fifty dol-

[Edwards v. Dwight.]

lars, due by note bearing even date with this deed, which sum has been advanced to us this day to enable us in the cultivation of our crop, and without such advance it would be impossible for us to obtain the necessary supplies in order to make a crop the present year." The mortgage contains a power to sell the mortgaged property in payment of the said indebtedness. After stating the transfer of the note, and complainant's ownership of it, the bill charges, that " the said debt and note and mortgage are unpaid, unsatisfied, and in full force and effect, and are all the property of orator." This is the only averment of indebtedness the bill contains. The witness for complainant, J. C. Airy, testifies, that " the said Edwards did, on or about the 30th day of October, 1869, pay to said Airys two hundred and thirty-eight 24-100 dollars on his said account for advances, secured by said note and mortgage." The witness Edwards proves the same thing. All the witnesses prove, that about the middle or last of December, 1869, Edwards delivered to the Airys two bales of the cotton grown on the place, and covered by the mortgage, in further payment of said mortgage indebtedness. These two bales netted $232.05 dollars. Added to the October payment, they amount to $470.29, paid on the mortgage, and for advances. The amount of advances actually made to Edwards by W. T. & J. C Airy up to October 1st, 1869, was $289.62. They made other advances to him up to the close of the year 1869, amounting to $125.75 ; aggregate up to that time, $415.37. About that time they took up a note Edwards owed to Dr. Parker, amounting to $114.80. There is an item of interest charged, $9.12 ; but whether interest on the advances, or on the Parker note, is not shown. Further advances were made during the year 1870, and payments were made, December 8, 1870, of $186.89, and November 28, 1871, of $93.44. This left then due from Edwards on account $208.79 ; one hundred and seventy dollars less than the advances claimed to have been made in 1870. On this statement of facts, it is manifest that Edwards paid, and overpaid during the year 1869, the three hundred and fifty dollars secured by the mortgage ; and, as we have shown, these payments were made, the first expressly, on the mortgage debt—so proved by Airy himself—and the last, in cotton covered and conveyed by the mortgage, so that, if the mortgage security be limited and confined to the note and sum specified in the mortgage, it was paid and discharged in full at the close of the year 1869, and there remained no debt secured by the mortgage.

It is contended for appellee, and the chancellor seems to have so decreed, that when a mortgage of property is made

[Edwards v. Dwight.]

to secure an indebtedness, and the parties agree that the mortgage shall stand as a security for further advances, such agreement may be proven by parol testimony, and will be upheld as binding between the parties, though inoperative as against subsequent *bona fide* incumbrancers. Some authorities go almost the length contended for, in their general statement of the principle.—*Hendricks v. Robinson*, 2 Johns.. Ch. 283; *Binkerhoff v. Marvin*, 7 *Ib.* 320; *James v. Johnson*, 6 *Ib.* 417; *Shirras v. Caig*, 7 Cranch, 34; Leading Cases in Equity, note to *Marsh v. Lee* (Ed. of 1859), 605 *et seq.* In most of these cases, there were peculiar circumstances, not necessary to be commented on here. In the following cases the question arose on bills filed to redeem, when it was ruled, that the mortgagor should not be allowed to redeem, except on payment of all indebtedness.—*Lee v. Stone*, 5 Gill & Johns. 1; *Walling v. Aiken*, 1 McMul. Eq. (S. C ), 1; *Joslyn v. Wyman*, 5 Allen, 62; *Robinson v. Williams*, 22 N. Y. 380; *Brown v. Gaffney*, 32 Ill. 251; *Williamson v. Downs*, 34 Miss. 402. These cases rest on the doctrine, that one who seeks equity must do equity. There are cases that hold, that after a mortgage has become inoperative by the payment of the debt secured, it may be again delivered as a security for a further indebtedness, and will be binding on the parties to the transaction.—*Underhill v. Atwater*, 22 N. J. Eq. 16. And a mortgage may be made to secure a further sum, by an indorsement to that effect on the mortgage.—*Choteau v. Thompson*, 2 Ohio State, 114. The following cases confine the security to the debt and sum provided for in the mortgage, and do not allow the provisions to be extended by parol to let in other debts; although much latitude is allowed in explaining what debts and liabilities are covered by the security, when the mortgage is indefinite or inaccurate in the description.—*Joslyn v. Wyman*, 5 Allen, 62; *Kelly v. Falconer*, 45 N. Y. 42; *Bacon v. Cottrell*, 13 Min. 194; *Johnson v. Anderson*, 30 Ark. 745; 1 Jones on Mortgages, section 360. In *Schiffer v. Feagin*, 51 Ala. 335, it is said: "When a debtor makes a mortgage or assignment as a security for an existing debt, the assignment or mortgage not contemplating and providing for future debts and advancements, the debtor in the making, and the creditor in accepting such mortgage or assignment, can have but one object in view,—the security of the existing debt; and moneys realized from such mortgage or assignment must be applied to the payment of that debt, to the exclusion of all others."

We have alluded hastily to these various rulings of other courts, not with a view of announcing definitely our concur-

[Edwards v. Dwight.]

rence with, or dissent from the principles declared in any one of the classes. The facts of this case, as we understand them, do not call for any such announcement. There are, however, two cogent reasons, founded in public policy, which would cause us to hesitate long before declaring, that when a mortgage security is executed to secure a debt of defined amount, or special description, parol testimony can be let in to enlarge the amount, or to tack to the mortgage another and different debt, whether sought to be done under an alleged contemporaneous, or subsequent agreement. The reasons are, *first :* It is of doubtful and dangerous policy to allow parties to add in this way a stipulation to a solemn written contract. *Second :* Such practice would unduly expose the mortgagor to the power and oppression of the mortgagee. But, as we have said, we need not decide these questions. This is not a bill by a mortgagor to redeem. It is a bill to foreclose. Waiving the question of the want of averment in the bill, that there was an agreement to place subsequent advancements under the security afforded by the mortgage, we think the proof wholly fails to establish such agreement. Evidently, when the cause was submitted to, and decreed by the chancellor, there was no proof of such agreement ; and we think the proof of J. C. Airy before the register, if that could be looked to in support of the equity of the bill, contains nothing on this subject, except inferences drawn by him as to the meaning and effect of the mortgage. The testimony of Mr. Lapsley may tend to show that Edwards believed his lands were under a mortgage to secure the debt claimed. His belief can not change the interpretation or legal effect of the mortgage. The chancellor should have dismissed complainant's bill.

The decree of the chancellor is reversed ; and, proceeding to render the decree the chancellor should have rendered, it is, by this court, decreed that the complainant's bill be, and hereby is dismissed. Let the costs of the appeal and of this suit in the court below and in this court, be paid by the appellee.