(83 South. 330)

McWHORTER v. TYSON. (3 Div. 361.)

(Supreme Court of Alabama. May 22, 1919. Rehearing Denied Dec. 8, 1919.)

1. WITNESSES ⟐140(15)—MORTGAGEE INCOMPETENT WITNESS TO TRANSACTION. WITH DECEDENT MORTGAGOR.

Under Code 1907, § 4007, prohibiting such testimony by interested persons, a mortgagee, who loaned money to decedent is an incompetent witness as to any transaction with or statement by decedent.

2. APPEAL AND ERROR ⟐232(2)—SPECIFICATION OF OBJECTION TO EVIDENCE ADMITS LEGALITY OTHERWISE.

Specification of grounds of objection to evidence must be taken as an admission that the evidence in other respects is legal.

3. EVIDENCE ⟐354(7)—STUBS OF CHECK BOOK NOT "SHOP BOOK."

In suit to restrain foreclosure of mortgage and for an accounting, brought by the administrator of a decedent, so that defendant was incompetent, under Code 1907, § 4007, to testify to transactions with or statements by decedent, the stubs of defendant's check book and entries thereon tending to support his contention of a loan to decedent *held* inadmissible, not constituting a "shop book" within the law of evidence.

4. WITNESSES ⟐165—WITNESS INCOMPETENT TO ESTABLISH AUTHENTICITY OF DOCUMENTARY EVIDENCE AS TRANSACTION WITH DECEDENT.

In suit to restrain foreclosure of mortgage and for an accounting, brought by the administrator of a decedent, so that defendant's testimony as to a loan made decedent was incompetent under Code 1907, § 4007, defendant was not a competent witness to make the necessarily suppletory oath supporting the admission in evidence of the stubs of .his check book, which showed two checks drawn tending to support his contention of a loan to decedent.

5. FRAUDS, STATUTE OF ⟐131(1)—PAROL AGREEMENT TO SECURE DIFFERENT DEBT FROM THAT IN MORTGAGE VOID.

Under the statute of frauds as to realty and the statute prohibiting parol mortgages of personalty, a parol agreement to impose on the property a charge or lien to secure a different debt or obligation from that originally intended is ineffective.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Bill by A. B. McWhorter against S. L. Tyson to restrain foreclosure of mortgage, for an accounting. and for cancellation. From decree for respondent, complainant appeals. Affirmed.

Respondent files cross-bill alleging that there were $7,000 due on the mortgage debt with interest, and prayed foreclosure of his mortgage for that amount.

W. M. Blakey and H. S. Houghton, both of Montgomery, for appellants. The checks and stub violated the statutes prohibiting a party from testifying as to transactions with a deceased person whose estate is interested. 63 Ala. 494; 67 Ala. 386. The original mortgage cannot stand as security for a new debt without a new contract or writing. 86 Ky. 311, 5 S. W. 760; 71 Ala. 271 (287); 2 Kan. App. 337, 43 Pac. 861; 76 Ala. 550; 30 Ark. 745; 116 Ala. 90, 22 South. 600; 27 Cyc. 1074–1075; 31 S. C. 259, 9 S. E. 862, 5 L. R. A. 219; 92 Ala. 502, 9 South. 315; 68 Ala. 389 (392); 73 Ala. 214; 62 Ala. 579; 69 Ala. 354; 73 Ala. 230; Code of Alabama, § 3355; 78 Ala. 544; 52 Ala. 597.

John R. Tyson, of Montgomery, for appellee. Independent of the statute of frauds, when a mortgage has been repledged as a security for borrowed money, a court of equity will not discharge or cancel the mortgage until the debt has been paid. 2 Jones on Mortgages, §§ 946, 1079; 5 Allen (Mass.) 62; 10 Allen (Mass.) 74; 120 Mass. 153; 11 N. J. Eq. 264; 32 N. J. Eq. 38; 22 N. J. Eq. 16; 92 Ala. 163, 9 South. 143, 13 L. R. A. 299; 97 Ala. 483, 12 South. 55; 99 Ala. 281, 12 South. 775; 4 Amer. Decisions in Equity, 258. No ruling was made with respect to the evidence of the stubs and checks, and hence those assignments will not be considered. 147 Ala. 446, 41 South. 291; 17 Ala. 466.

SAYRE, J. The original bill in this cause was filed by appellant, as administrator of the estate of R. S. McWhorter, deceased, seeking to enjoin appellee from selling a plantation in Lowndes county under the power of sale in a mortgage which deceased in his lifetime had made to appellee and to redeem. Appellee's answer, which was made a cross-bill under the statute, prayed for a decree of foreclosure. The original bill admits an indebtedness of $4,000, to speak in round numbers; appellee claims the indebtedness secured by the mortgage at the inception of this controversy amounted to $7,000, still speaking in round numbers; and the difference of fact between the parties is the difference between these two sums.

The mortgage, executed January 2, 1897, secured the payment of five purchase-money notes for the aggregate sum of $10,000 and interest, payable annually on November 15, 1897 to 1901. Appellee admits that on February 23, 1907, the balance due on this mortgage had been reduced to $4,000. The mortgagor had paid interest from year to year, and it is admitted that on November 14, 1904, he made his last payment on the principal, $3,000, leaving a balance of $4,000 then due. This payment satisfied the third of the series of notes above mentioned and a balance due on the second after allowing a payment which had been previously made and credited thereon. Appellant's intestate,

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mortgagor, as aforesaid, died in March, 1916, and very soon thereafter this controversy arose. It then developed that appellee had in his possession the notes in question, and that appellant had possession of appellee's receipt for $3,000 of date November 14, 1904. This situation presents the subject of review.

[1] Appellant relies upon the receipt in his hands and appellee's admission that the payment thereby witnessed was made as the receipt says it was. Appellee's theory of the case is that appellant's intestate came to him on February 23, 1907, desiring a loan of $3,000, and offered the uncanceled notes, which he had received on the occasion of the payment of $3,000, as evidence of the new loan, and proposed to have the mortgage of January 2, 1897, stand as security for the new loan; that he consulted with his attorney on the legal sufficiency of the security thus proposed, and thereupon made the additional loan of $3,000 which he now proposes to collect by virtue of his mortgage. Appellee has testified in detail to the facts necessary to support his contention; but he is an incompetent witness as to any transaction with, or statement by, the deceased (section 4007 of the Code), and his testimony as to the essential facts of the transaction alleged cannot be considered. Also the attorney with whom he consulted is dead. However, he was able to show in evidence the stubs of a check book one of which indicated that on February 23, 1907, he drew a check in favor of appellant's intestate for $2,500, under which he had set the word "loan," and another indicated that on the same day he drew a check payable to intestate in the sum of $500, under which he set the words "bal. loan." Appellant, recognizing the great significance of these stubs and the memoranda thereon, objected to their admission in evidence, and now urges that they should not be considered.

[2] Several grounds of objections were taken to this stub book, and it may be conceded that it was not admissible except as being in some sort a book of account. The modern authorities hold that—

"The material, form, and construction of the book offered in evidence as a book of original entries are unimportant, provided such book be capable of perpetuating a record of events, and the entries are made in conformity with the general rules governing the admissibility of such entries." 9 Am. & Eng. Encyc. Law (2d Ed.) p. 917, and cases there cited; 10 R. C. L. p. 1178; Shirley v. Southern Railway, 198 Ala. 102, 73 South. 430.

Appellant does not question the genuineness of the stub book entries. We do not find any challenge of the truthfulness of the testimony by which appellee undertook to establish the facts upon which their admissibility, and by the same token their genuineness, depended. Appellant does deny their admissibility as book entries upon the ground that book entries are to be excluded in the circumstances here shown because they relate to transactions with a deceased person whose estate is interested in the result of the suit. No other possible ground of objection need be considered, for the specification of grounds of objection to evidence must be taken as an admission that the evidence in other respects is legal; otherwise the party objecting might frequently reverse a judgment on a point never decided in the court below, and which, if presented, the other party might have avoided, by rendering it competent by the introduction of other proof. Walker v. Blassingame, 17 Ala. 810; Creagh v. Savage, 9 Ala. 959. Appellee was a competent witness to make the necessary suppletory oath; that is to say, it was competent for him as a witness to state the facts necessary to establish the authenticity of the stub book and the entries therein. Warten v. Black, 195 Ala. 93, 70 South. 758. The court thinks the objection under consideration untenable because one reason for the admission of evidence of this character has always been that the person who made the entries is at the time of the trial disqualified as a witness. Warten v. Black, supra. The stub book and its relevant entries were admissible, under the rule prevailing in this state, as evidence in themselves of the facts shown thereby. Bolling v. Fannin, 97 Ala. 619, 12 South. 59; McDonald v. Carnes, 90 Ala. 147, 7 South. 919. Such evidence is to be received with that reserve the circumstances suggest. In this case there was other evidence pointing to the same conclusion—the testimony of De Lemos, Folda, and Asher. The testimony of these witnesses has been made the subject of much unfavorable criticism, but it was clearly admissible, and to the extent at least it was in accord with apparently trustworthy circumstances it must have consideration.

The testimony of neither party to the transaction being available, proof of the immediate facts must be found chiefly in such collateral facts as were accessible. This leaves the issue not so clearly solved as should be expected in other circumstances. Still upon the whole evidence we feel reasonably well satisfied that appellee's version of the facts should be sustained. Other considerations contribute to the result, but of peculiar force are the facts that at the death of appellant's intestate the second and third notes of the series, reciting the fact that they were secured by mortgage, were in the possession of appellee with no notation of payment upon them, and that upon February 23, 1907, appellee drew his checks payable to intestate in the sum of $3,000. Both of these facts are significant. The latter, if

accepted as a fact, can only be explained consistently with the usual motives of human conduct on the hypothesis that appellee did on that date advance to intestate $3,000 on the security of the mortgage which he already held.

But appellant insists that it was not competent for the parties to the original mortgage by parol agreement to extend that security to any new advances or any debt other than that originally secured thereby. Whether a mortgage, once paid, can by the mere verbal agreement of parties be transferred to a new debt, which it was not originally given to secure, is open to serious question. Such was the case which evoked the dictum by Judge Stone in Edwards v. Dwight, 68 Ala. 389. It seems that nothing less than a new deed could create a new title. In Morris v. Alston, 92 Ala. 502, 9 South. 315, cited by appellant, it was said that it was not permissible by a parol agreement to so alter a mortgage in its operation as to cause it to stand as security for a new debt, different in character and amount from that mentioned in the instrument, payable at a different time and to another person. But in that case, notwithstanding the transaction there in question on its face operated as an absolute payment and discharge of the mortgage debt and the creation of a new and independent liability of the mortgagor to a party other than the original mortgagee, it was held that the life of the mortgage and of the debts secured thereby had been preserved as the property of the new holder. In Lindsay v. Garvin, 31 S. C. 259, 9 S. E. 862, 5 L. R. A. 219, another case found upon appellant's brief, the effort was, to use the language of the court—

"to resuscitate a dead instrument, and to give it a feature by a parol agreement which it did not possess before said parol agreement was made, and this, too, entirely by parol testimony."

In Jones on Mortgages it is said that—

"When, by any arrangement between the mortgagee and mortgagor, the mortgage is continued in force as a security for a new indebtedness, although the mortgage has no binding force as a mortgage, yet a court of equity will not aid a mortgagor, who has obtained the mortgagee's money upon the strength of such arrangement, in obtaining a release or discharge of the mortgage." Volume 2 (7th Ed.) § 946.

In Massachusetts this doctrine is well settled and is stated in this form:

"If the mortgagor had agreed by parol that the mortgage might be held as security for advances beyond the amount originally secured by it, and if the advances have been made in good faith, the mortgagor would not be given a decree for redemption unless he would pay the amount so advanced; the doctrine being that he who seeks the aid of a court of equity must do equity." Flye v. Berry, 181 Mass. 442, 63 N. E. 1071.

This is also the rule followed in Illinois (Carpenter v. Plagge, 192 Ill. 82, 61 N. E. 530) and in New Jersey (Ferry v. Meckert, 32 N. J. Eq. 38). To the same effect see 11 Am. & Eng. Encyc. of Law (2d Ed.) p. 230, note 4, and cases there cited. We have seen no adjudications to the contrary. The statement of 27 Cyc. 1075, cited by appellant, is that—

"It is generally held that a mortgage of land cannot, by any mere parol agreement of the parties, be made to cover any other debt or any fresh advances or any larger amount than that expressed in the mortgage itself, certainly not to the prejudice of third persons acquiring rights in the property or liens upon it."

To this text are cited Morris v. Alston; Lindsay v. Garvin, supra; an early case from Illinois; Stoddard v. Hart, 23 N. Y. 556; Hughes v. Johnson, 38 Ark. 285; and Johnson v. Anderson, 30 Ark. 745. We have been unable to read these cases to a denial of the proposition on which appellee's case is planted—the proposition quoted supra from Jones on Mortgages.

We have a line of cases which furnish a strong analogy in support of the principle hereinbefore set forth. These cases hold it to be the settled law of this state and generally recognized in equity jurisprudence that, where a party applies to a court of equity for relief against a contract on the ground of illegality in violating the provision of some statute prohibiting the making of such contract, the court will require him, as a condition to granting the relief, to do equity by restoring whatever he may have received under the contract, or, as the principle was stated in Grider v. American Freehold Land Mortgage Co., 99 Ala. 281, 12 South. 775, 42 Am. St. Rep. 58, where the leading cases are cited:

"We cannot assent to the proposition that a person can obtain another's money upon the faith and assurance of a mortgage security, and, the next moment after he receives and appropriates it, go into a court of conscience, where the maxim that he who seeks equity must do equity has ever been vigorously upheld and applied, and ask that court to cancel the security as a cloud on his title, still retaining the money, and making no offer to return or repay it. * * * If he is unwilling to do this, he must stand upon his rights at law. Equity will not help him."

At the time when appellant's intestate received the new loan of $3,000 it is not denied that appellee had a valid subsisting mortgage which originally secured the sum of $3,000 and more besides. We find that the original notes evidencing the indebtedness secured by the mortgage were reissued to the extent of $3,000 with the understanding that they should be secured by the mort-

gage. Such being the case, appellant was not entitled to the injunction prayed in his original bill. Such being the case, and complainant having in his bill submitted himself to the jurisdiction of the court and offered to do equity by paying the amount due upon the mortgage indebtedness, to be ascertained by the decree, appellee was correctly awarded a decree of foreclosure for the entire amount of appellant's indebtedness to him, and that decree is affirmed. Carpenter v. Plagge, supra. To the end that the court below may make a new decree ordering a foreclosure unless appellant, within a reasonable time to be fixed by the court, shall pay the sum due upon the mortgage, as ascertained by the decree of March 30, 1918, together with the costs incurred in this court and in the circuit court, the cause will be remanded to the trial court for further proceedings in accordance with this decree.

Affirmed.

SOMERVILLE, J., concurs in the result. THOMAS, J., concurs.

GARDNER, J. I concur in the result without regard to a consideration of the check book stub, and therefore am not committed to what is said in the opinion as to the admissibility of such stub in evidence.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur in the conclusion and result of this appeal, but not in all that is said in the opinion.

[3] They are of the opinion that the stubs of the check book were not admissible in evidence for the following reasons: Neither the private check book as a whole nor the stub part of it is prima facie a "shop book" within the meaning of that word as used in reference to the rules of evidence. The stubs of a private and individual check book are only at best mere private memoranda of the owner and user of the book. This has been expressly held by this court. Carter v. Fischer, 127 Ala. 52, 28 South. 376.

[4] If it could be considered within the shop book rule of evidence, it was not properly or sufficiently authenticated and connected with the transaction in question to render it admissible in this case. The only evidence to authenticate or to connect it with the other evidence in the case was that of the owner of the check book. He was an incompetent witness to testify as to his transactions with the other, deceased, party whose estate was interested in this suit. If the statute renders him incompetent to testify as to the transactions purporting to be evidenced by the stubs, surely he was incompetent to authenticate the stubs and to connect them with the transactions which would bind the estate of the deceased. The stubs do not purport to bind the deceased. At best, they are only appellee's private memoranda of checks which the deceased is claimed to have received. Surely the stubs cannot be placed in a higher or better class of documentary evidence than ordinary shop books, regular business ledgers or day books, which purport to register or record all one's business transactions. This court has repeatedly held that such shop books could not be so authenticated and connected with the transaction in question if the witness attempting to so authenticate and to connect them with the transaction in question which the entries purported to record or register was himself incompetent to testify to the transactions themselves which purported to be so recorded or registered. The case of Dismukes et al. v. Tolson et al., 67 Ala. 386, and several cases following it are express authorities on this question. These cases expressly construed our statute on the subject, and the statute has been repeatedly reenacted with this construction placed on it. It is therefore too late now to depart therefrom.

[5] We likewise do not approve of what is said in the opinion of Justice SAYRE with respect to the effectiveness of a parol agreement between the parties to the mortgage to impose on property a charge or lien to secure a different debt or obligation from that originally intended. The statute of frauds as to real property and the statute prohibiting parol mortgages of personal property and the well-founded decisions of this court conclude to the contrary. Edwards v. Dwight, 68 Ala. 389; Morris v. Alston, 92 Ala. 502, 9 South. 315; Stringfellow v. Ivie, 73 Ala. 214; Cade v. Floyd, 120 Ala. 424, 24 South. 944.

In addition to the foregoing, and in a sense independent thereof, Justice McCLELLAN entertains the view that the effect in law of the agreement proven to his satisfaction by the respondent was but a rescission, by mutual consent, of the payment of $3,000 made by McWhorter on November 14, 1904, thereby effecting the restoration of the mortgage debt and its security to the status existing before the stated payment (later rescinded) was made.