195 So. 889

**ELSON v. PRIDGEN**

**4 Div. 140.**

Supreme Court of Alabama

May 9, 1940.

Rehearing Denied June 27, 1940.

F. M. Gaines, of Dothan, for appellant.

N. Frank Pridgen and Martin & Jackson, all of Dothan, for appellee.

GARDNER, Chief Justice.

Omitting details of pleading here unnecessary to note, the bill in this case, originally one to quiet title, by amendments presented issues as to the validity of a certain mortgage on real estate in the city of Dothan, Alabama, bearing date February 22, 1924, executed by complain-

ant's (appellant's) father, E. L. Dowling, to M. F. Pridgen, father of respondent. Complainant's ownership of the property and respondent's ownership of the mortgage are not controverted issues here. In the alternative, complainant sought redemption from this mortgage should its validity and binding effect be sustained. The chancellor sustained the mortgage, ordered a reference to the register, whose report thereon of September 6, 1939, was in all things duly confirmed—the amount fixed as due on the mortgage and to be paid by complainant as redemption being $13,794.19.

On January 4, 1933, E. L. Dowling executed his note for $17,000, payable January 4, 1934, to M. F. Pridgen, in which is the following recital: "This note and amount is secured by a certain real estate mortgage executed by E. L. Dowling on February 22, 1924, for $19,-400.47, and recorded in Book 141, page 220, in the records of Houston County, Alabama, and this is evidenced by all amount due on such mortgage to date and is to draw eight per cent. interest from date of execution." On the same day (January 4, 1933), E. L. Dowling addressed to M. F. Pridgen the following letter:

"Dothan, Alabama.
"January 4, 1933.

"Mr. M. F. Pridgen,
"Dothan, Alabama.
"Dear Sir:
"I have this day audited and verified my account with you which is secured by a certain mortgage executed to you on February 22, 1924, for $19,400.47, and recorded in Book 141, page 220, in the records of Houston County, Alabama, and find the balance due, after deducting all credits of every kind and description, to be $17,000.00. I assure you that in no way that there is no usury interest in this amount, and I this day executed to you a note for like amount with interest to be paid from date as full, final and complete settlement of all transactions heretofore made. I also authorize you to pay premiums on policies and charge against this mortgage, and all other amounts that might become necessary.

"Yours truly,
"Wit:                           E. L. Dowling.
"Valeta Armstrong."

This letter as well as the note were witnessed by Valeta Armstrong, then book-keeper for Pridgen and Holman, and whose testimony strongly corroborated by other proof, establishes the fact that E. L. Dowling himself calculated the amount he was due said Pridgen, and took the figures from the entries in the ledger, most of which he had made himself as bookkeeper for Pridgen and Holman, or for Pridgen. And, in his own handwriting, the ledger shows that on that date, January 4, 1933, he was due a balance of $17,000, and so entered by him on the ledger with the notation, "note for balance, $17,000."

That Dowling on January 4, 1933, executed the note to Pridgen for $17,000, acknowledging that it was secured by the mortgage of February 22, 1924, and on the same day signed a letter to like effect, is not seriously controverted, and, indeed, argument to the contrary could not be sustained in the light of the overwhelming proof in that regard.

Disinterested witnesses establish the good faith of the parties, both Dowling and Pridgen, with no indication of any unfair dealing or over-persuasion. Dowling himself calculated the balance due, and expressed satisfaction as to its correctness.

Complainant, in the first place, answers by saying the mortgage of February 22, 1924, had been paid prior to the execution of the note and other instrument bearing date January 4, 1933, and having been paid was not subject to revivor by these latter instruments, citing Cade v. Floyd, 120 Ala. 484, 24 So. 944; McWhorter v. Tyson, 203 Ala. 509, 83 So. 330; Hammock v. Oakley, 228 Ala. 588, 154 So. 906, 908. But we think the cited authorities are readily distinguishable.

Complainant's insistence for payment of the 1924 mortgage rests largely upon the following circumstances: Two checks given by D. W. Baker to M. F. Pridgen, which are produced as having been found in an envelope in a metal box of Dowling's after his death, aggregate with exactness the amount of Pridgen's note to Baker also found in the metal box and marked paid; Baker's testimony in this respect somewhat vague and uncertain, that the whole matter was settled by the Dowling and Pridgen papers, and with the further circumstance that a few days following the execution of the 1924 mortgage Dowling filed a petition in bank-

680

ruptcy. Complainant also offered some proof tending to show the 1924 mortgage was at one time in the metal box, and there is some implication that it was surreptitiously removed from the box. But we consider the evidence so overwhelmingly refutes this latter suggestion of any such alleged removal as to need no further comment here. The 1924 note and mortgage were among Pridgen's effects when he died in March 1933, and went into the hands of the executrix of his estate. We think it clear enough this paper was never in Dowling's possession. Dowling died in May 1934.

It may be conceded that the proof noted arouses a suspicion that the mortgage of 1924 was a "build up," to use an expression found in the record, in contemplation of bankruptcy by Dowling, viewed also in the light of the relationship existing between Dowling and Pridgen, the latter's wife and Dowling being first cousins. Yet Marvin Holman, junior partner of Pridgen and Holman, and witness for complainant, thought the matter between Baker and Pridgen bore no relation to the 1924 mortgage. But the exigencies of this case require no definite conclusion upon this question. Let it be assumed that bankruptcy of Dowling was in contemplation, and there was a "build up" as to the amount: yet it clearly appears that regardless of that matter, the mortgage did secure indebtedness of Dowling to Pridgen, the bona fides of which cannot be seriously questioned.

Baker himself admits that Dowling still owed Pridgen, but in no such large sum. And the mortgage of 1924 also discloses that it was given to better secure a mortgage executed by Dowling and wife to the Dothan Guano Company, on September 13, 1922, embracing this realty, for $6,000, and transferred to D. W. Baker and C. F. Baker, which mortgage was duly transferred on February 22, 1924, to M. F. Pridgen. We find no satisfactory indication in the record that this latter mortgage has ever been paid. The 1924 mortgage contains also the following clause: "And to better secure the same, together with additional amounts furnished either of us by, or which either of us owe or may owe on any account to said M. F. Pridgen, its successors or assigns before such debt is fully paid, in money or otherwise." And the ledger discloses

numerous such advances made by Pridgen to Dowling in the years following.

The Dowling note of January 4, 1933, and his letter to Pridgen, fully disclose that all parties considered the 1924 mortgage as securing these subsequent advances. If, therefore, for the purpose in hand, it be conceded the consideration of the 1924 mortgage was originally enlarged in contemplation of the bankruptcy, yet we think it clear enough that it nevertheless at that time secured bona fide indebtedness, and according to its terms and the manifest intention of the parties it likewise secured these future advances which were made to Dowling. Indeed, payments were made on this indebtedness after Dowling's death by complainant through her husband acting as her agent; and there were two policies of insurance on the life of Dowling which were held by Pridgen as further security, and we think it well established by the proof that these sums, aggregating nearly $10,000, were paid on this mortgage indebtedness with the knowledge of complainant, and certainly with the active cooperation of the administrator of her father's estate.

We conclude, therefore, the contention of complainant that the 1924 mortgage was paid, is unsustained by the proof. There is of consequence no revivor or novation involved, as we think the mortgage was, as between the parties, entirely valid, and all along secured bona fide indebtedness, which was enlarged by subsequent advances also secured by the mortgage under its very terms.

But complainant further argues that when the 1924 mortgage was executed, as well as when the note and other instrument of January 4, 1933, were signed, Dowling was of unsound mind, and there was much proof offered by the respective parties upon this issue.

The record here is rather voluminous, and consists of three separate volumes. Since the passage of the Act of 1915 (section 10336, Michie's Code of 1928) it has not been the policy of this Court to note with detail discussion questions of fact. McRee v. Russell, Ala.Sup. 194 So. 827,[1] present term. Nor would it here serve any useful purpose. All the evidence in this record has been read and studied with care, and to discuss

---

[1] Ante, p. 343.

it here would extend the opinion to undue length. Suffice it to say, no detail has escaped our notice.

Upon this issue of insanity, though complainant has offered some proof to the contrary, we think the evidence, by great preponderance and in a very persuasive manner, discloses this contention is also without merit.

True, Dowling may have been a man of some eccentricities and may have been unfortunate in business ventures. But he is shown to have been of fairly good education, conducting businesses, and for seven or eight years bookkeeper for Pridgen and Holman, then in Dothan, and with of course numerous acquaintances and friends. He was very friendly with Pridgen and his family, and, indeed, Pridgen in his will suggested to his widow, whom ·he appointed executrix, that she consult Dowling in regard to the partnership affairs. And witness after witness testified, not only to the soundness of Dowling's mind, but stated emphatically that they had never heard it questioned until this suit arose. But we forego further discussion upon this issue. We are firmly convinced that Dowling was of sound mind, and knew and understood what he was doing when the 1924 mortgage was executed, and also when he made the note of January 4, 1933.

As to the report of the register concerning the amount due, complainant's attack appears to be centered only upon one item. This item relates to the value of a storehouse in Dothan, known as the Dothan Publishing Company building, for which Dowling is credited only $5,000, and which complainant. insists should have been at least $10,000—it being property which Dowling had deeded to Pridgen years previously (1923). But all argument in regard to the matter of the amount of indebtedness is, for all practical purposes, answered by the conclusion that Dowling was of sound mind, and knew what he. was doing when he took the books, calculated his indebtedness to Pridgen, and signed the note of January 4, 1933. He was more familiar with this matter than any other person, and the proof clearly discloses that he went carefully over the whole matter. We have considered the several contentions of complainant, and find them without merit.

The chancellor has accompanied his decree with a helpful opinion, which is in the record, and our study of the case leads to the ·result of an affirmance of the decree rendered. It will be so ordered.

Affirmed.

THOMAS, BOULDIN, and FOSTER, JJ., concur.

