IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

### EASTERN DISTRICT.
### NEW-ORLEANS, FEBRUARY, 1838.

---

FORSTALL AND CO. *vs.* BLANCHARD ET AL.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF WEST BATON ROUGE, THE JUDGE THEREOF PRESIDING.

EASTERN DIST.
*February,* 1838.

FORSTALL & CO.
*vs.*
BLANCHARD
ET AL.

A partnership may sue on a contract for the sale and delivery of slaves, made by one of the partners to the firm of which he is a member.

A sale of slaves, the consideration of which, is a sum of money acknowledged at the time to be owing to the vendees, and stipulated to be paid on a particular day, and on failure, the sale to become absolute ; otherwise null and void : *Held*, that this is a valid sale, on failure of the vendors to pay the sum due the vendees on the day stipulated.

When two debts are not equally due and payable, the debtor is presumed to have the greatest interest to discharge that which is already due and payable, and for which he is liable to an immediate suit, in preference to one not due ; and the creditor is bound to impute payment to that one, when nothing is said.

1    VOL. XII.

EASTERN DIST.
February, 1838.

FORSTALL & CO.
vs.
BLANCHARD
ET AL.

So, a debtor is presumed to have greater interest in discharging a mortgage than a chirographery debt, when both are equally due and payable; and imputation of payment must be made accordingly.

This is an action to recover two slaves, which the defendants had conveyed to the plaintiffs by a *vente à réméré*.

The plaintiffs show, that on the 11th of April, 1833, Blanchard and wife, by notarial act, conveyed to them two slaves, Bob and Lindor, for and in consideration of the sum of one thousand three hundred and twenty dollars, which they acknowledged they then owed to the plaintiffs, and three hundred dollars for money paid C. Allain, on their account; that by the terms and conditions of the sale, if Blanchard and wife should pay the said sum of one thousand three hundred and twenty dollars in all the month of February following, to the plaintiffs, then the slaves were to be retroceded; otherwise the sale was to become absolute. The payment was never made, and in April, 1835, the plaintiffs, through a notary public, made a legal demand of payment on the defendants, which was not complied with on their part, and a protest thereof duly made. The petitioners pray that said slaves be decreed to belong to them and given up accordingly, and in the meantime that they be sequestered.

The defendant, J. Blanchard, denied the plaintiff's capacity to sue on the act of sale, and averred that said pretended sale was a nullity, because the individual partner who signed for the firm, had no legal authority to do so. He further avers, that in the month of February, 1834, during the time he had to pay in, he did pay a greater sum to the plaintiffs, viz: one thousand nine hundred dollars, which ought to have been imputed to this debt.

The wife pleaded separately, denied the plaintiffs' capacity to sue, and pleaded a general denial; she further states she never received any consideration for the slaves mentioned; that she was not indebted to the plaintiffs, and if such debt was due to them it was her husband's, and for which she received no benefit or advantage, and that she signed the act of sale only as surety of her husband, which is not legal and binding. She further states these slaves belong to her,

and prays that the plaintiff's suit be dismissed, the act of sale
cancelled, and that she be quieted in the possession of the
slaves.

Upon these pleadings and issues the case was tried before
the court.

The plaintiffs produced the public act of sale, and other
evidences of their claim. The defendants introduced evi-
dence to show that the slaves were the separate property of
the wife; and further showed, that in the month of Febru-
ary, 1834, before the period of payment of the debt, for
which the slaves were conditionally sold, was final, the
defendants sent an agent to get a receipt from the plaintiffs
for the proceeds of twenty-five hogsheads of sugar, amount-
ing to one thousand nine hundred dollars, who was told that
it did not extinguish a debt Blanchard then owed them on
an account, being upwards of three thousand dollars.

The district judge was of opinion, the plaintiffs could not
recover and dismissed the suit, reserving to them what-
ever rights they may have on their accounts. From this
judgment they appealed.

*Roselius* and *Preaux*, for the plaintiffs, contended, that the
sale was *bonâ fide; a vente à rémêrê* with the power to
redeem, and it was clear the defendants never availed them-
selves of their right of redemption.

2. It is not proved that the property sold was the separate
property of the wife; nor does it appear that the price was
paid in a debt due by the husband.

3. The plaintiffs having exhibited an authentic act of sale,
it is incumbent on the defendant to make out a clear case to
exonerate themselves from the liabilities of their contract.

*A. N. Ogden*, for the defendant, insisted, that the property
in the slaves, belonged separately to the wife, and the debt,
to secure the payment of which, being due by the husband
alone, the contract is not binding on her. The form of the
contract does not change her liability. 4 *Martin, N. S.*,
388. 2 *Ibid.*, 39. 5 *Ibid.*, 431. 7 *Ibid.*, 252.

EASTERN DIST.
February, 1838.

FORSTALL & CO.
vs.
BLANCHARD
ET AL.

2. The evidence shows payment to a sufficient amount to extinguish the debt, and it ought to be so imputed, as this was the most onerous debt.  6 *Martin, N. S.*, 28.  3 *Ibid.*, 483.  4 *Ibid.*, 79.

3. The exceptions to the capacity of the plaintiffs to sue, should have been sustained.  There is no evidence on record to prove the capacity in which they do sue, and a special denial is pleaded.

*Martin, J.,* delivered the opinion of the court.

The plaintiffs' claim to be put in possession and declared to be the legal owners of two slaves, which they allege to have been conveyed to them by a sale, *à rémére,* the defendants having failed to repay the price at the period fixed in the conveyance.

The defendants severed in their answers.  The husband denied the right of the plaintiffs as members of the firm, to maintain any action on the notarial act referred to in, and annexed to the petition, and pleaded that *before the* day of payment, the plaintiffs received from him a sum of money, which they ought to have applied to the extinguishment of the debt specified in the instrument now sued on.

The wife denied the consideration of the contract, pleaded payment by her husband, averred that the slaves were her property, and that the consideration of the conveyance under which they are claimed, was a debt of her husband, not resulting from any thing that accrued to her private benefit. There was judgment for the defendants, and the plaintiffs appealed.

A partnership may sue on a contract for the sale and delivery of slaves, made by one of the partners to the firm of which he is a member.

It appears to us, that the plaintiffs have a right to sue on a contract made by one of them, in the name of their firm.  It is not contended that there are other partners of the firm than the plaintiffs.

The consideration of the conveyance was a sugar mill for the plantation of the wife, part of her paraphernal estate, and a sum of money which she owed to C. Allain, and was paid by the plaintiffs.

The conveyance purports to be a sale of two slaves, and the consideration is a sum of money which the defendants acknowledge they owe to the plaintiffs, and which they promised to pay in all the month of February following. It is provided that on the failure of payment at that period, the sale is to become absolute and irrevocable ; and on timely payment, null and void. Although no consideration appears to have been received by the vendors, as the vendees did not discharge them from the debt they owed, but on the contrary stipulated for the payment of it at a future period ; it appears to us there was a sale, since the vendees could not have sued for their debt before the period fixed for its payment, nor afterwards, since in case of failure of payment, the slaves were to be their own absolutely ; and they could not have the slaves and the debt. It remains to be inquired whether the proceeds of a parcel of sugar of the defendants, sold by the plaintiffs, was rightly imputed by the latter to a debt due them by the former, on an open account; or whether, as the defendants contend, they should have applied it to the discharge of the debt mentioned in the conveyance.

The sugar was sent by the defendant to the plaintiffs, on the 14th of February, without any mention of the debt, to which the proceeds were to be imputed. A few days afterwards, to a request for a receipt for the net proceeds of the sale of the sugar, with an intimation that the defendants thought that the debt mentioned in the conveyance had thereby been discharged, the plaintiffs replied, that they had imputed these proceeds to a larger debt due them by the defendants on an open account. As the defendants, at the time they sent the sugar, gave no direction with regard to the imputation of the proceeds, the plaintiffs had a right to make it to the debt which the defendants had the greatest interest to discharge, id est, to that which was most onerous to them. When two debts are not equally due and payable, the debtor is presumed to have the greatest interest to discharge that which is already due and payable, and for which he is liable to an immediate suit, in preference to the other, which is not yet payable, and the payment of which he may

EASTERN DIST.
February, 1838.

delay without exposing himself to a suit. When both debts are equally due and payable, the debtor is presumed to have less interest to discharge one which is a simple chirographery debt, than one for which the creditor has a privilege, mortgage or security. In the present case, had the debt mentioned in the conveyance, and that in the open account, been both exigible and suable at the time the sugar was sold, there is no doubt that the defendants could have rightly claimed that the imputation should be made to the first, because the creditors had security for it, to wit : the two slaves were to become theirs in case of non-payment. It is true as this debt was payable in all the month of February, the defendants had a right to pay on the first of February, and on every other day of that month ; and, consequently, on that on which the sugar was delivered, and the plaintiffs could not have refused to receive the payment ; but the defendants were under no obligation to make it. The money due was in *facultate solutionis*. The defendants were at liberty to avail themselves, or not, of this faculty. The choice was theirs, and if they did not make it, the plaintiffs had no right to do it for them. Had they made the imputation to the debt mentioned in the conveyance, the defendants might have insisted that it ought to have been made on the other, which they were bound to pay, and which was suable. The plaintiffs, therefore, had a right to make the imputation to the open account. It follows, that the debt mentioned in the conveyance, was not paid at the period stated, nor afterwards, when they were put *in mora* by a formal demand, nor at any time since.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed ; and proceeding to give such a judgment, as in our opinion ought to have been given below, it is ordered, adjudged and decreed, that the plaintiffs do recover from the defendants the slaves Bob and Lindor, with costs in both courts.