### In re WILLIAM P. COPPING SHEET PLATE & IRON WORKS, Inc.

(District Court, E. D. Louisiana. June 30, 1926.)

No. 2880.

**1. Courts ⊸359.**

Ordinarily, in cases arising exclusively under federal law, rule as to set-off is not influenced by local law or usage.

**2. Courts ⊸359.**

Since Bankruptcy Act, § 68 (Comp. St. § 9652), does not regulate imputation of payments where there is plurality of debts of unequal rank between bankrupt and creditor, nor does federal Constitution or statutes provide therefor, laws of state under Rev. St. 721 (Comp. St. § 1538) become rules of decision in federal courts.

**3. Bankruptcy ⊸326.**

Under Rev. Civ. Code La. arts. 2163-2166, as construed by state court, bank holding three notes of even date against bankrupt, in setting off balance on deposit, must impute credit to bankrupt of interest on all notes and balance on note secured by mortgage rather than other unsecured notes.

In Bankruptcy. In the matter of the bankruptcy of the William P. Copping Sheet Plate & Iron Works, Incorporated. On petition of the American Bank & Trust Company for review of an order by the referee directing it to credit bankrupt as set-off for the amount of its deposit on certain secured note. Petition dismissed, and cause remanded.

Legier, McEnerny & Wagnespack, of New Orleans, La., for American Bank & Trust Co.

Claude L. Johnson, of New Orleans, La., for trustee.

W. Blair Lancaster, Jr., of New Orleans, La., for bankrupt.

BURNS, District Judge. Petitioner, American Bank & Trust Company, prays for a review of an order by the referee, dated June 19, 1925, directing it to credit the bankrupt as a set-off with the amount of its deposit in a checking account with said bank on a certain note for $3,000, held by the latter, and secured by a chattel mortgage on certain machinery of the bankrupt debtor. The bank had previously sought to impute this credit to two other notes of the bankrupt, also held by it, one for $4,000, and one for $2,000, secured by the indorsement of a personal surety named A. Patorno.

These notes were dated and due chronologically as follows: (1) The one for $3,000, dated March 26, 1924, due 20 days, or June 3, 1924; (2) that for $4,000, dated May 13, 1924, due June 2, 1924; (3) and that for $2,000, dated May 14, 1924, due June 2, 1924.

Each note bears on its face, inter alia, the stipulation, "This note is secured by pledge and delivery of the securities or property mentioned on the reverse hereof," etc. On the reverse of the note for $3,000 appears the indorsement: "$5,000 demand chattel mortgage note also to secure two other notes of $1,000 each." These two notes of $1,000 each are not included in the bank's claim and therefore are omitted from consideration. On the reverse of the note for $2,000 appear the indorsements, "Collaterals attached other notes," and "A. Patorno." On the reverse of the note for $4,000 appear the indorsements as follows: "Fifty shares Fidelity Homestead Ass'n. #3911;" "A. Patorno, Jr.;" and "May 30th, 1924, balance of checking a/c applied on within note as per terms of note $2,006.72." The pledged homestead stock shown by the first indorsement is nowhere referred to in the schedules or in the record of proceedings, and is otherwise unaccounted for. It will therefore be omitted from consideration.

These proceedings were begun on July

24, 1924, by the filing of a petition for involuntary bankruptcy on behalf of Anthony Patorno and two other creditors, who alleged that the William P. Copping Steel Plate & Iron Works, Incorporated, was insolvent and had committed an act of bankruptcy within four months by applying for a receiver in the civil district court for the parish of Orleans, in proceedings there No. 152755, entitled Dixie Mills Supply Co., Incorporated, v. William P. Copping Steel Plate & Iron Works, Incorporated.

Following the adjudication in bankruptcy, the trustee proceeded by rule against the American Bank & Trust Company to show cause why their proof of secured debt for the note of $3,000 should not be reduced by applying the credit of $2,006.72, being the bankrupt's balance on deposit at the time of its application for a receiver, to that note which was secured by chattel mortgage, and not to the note of $4,000. The trustee's rule was made absolute by the referee, who held that the credit should be imputed equitably to the $4,000 note. The trustee had conceded that the bank had the right under the terms and stipulations of the notes to set off the debt due it out of the balance on deposit due its debtor as a depositor. All three of the notes contain the following pertinent stipulations:

"The securities pledged with this note are also pledged to secure any other obligations of the maker due or hereafter to become due under any of the provisions hereof, any money or any other property of any kind whatever on deposit, or otherwise to the credit of the maker—on the books of, the American Bank & Trust Company—may without notice be applied, at the discretion of the American Bank & Trust Company, to the full or partial payment of this note.

"Should the maker of this note, or any of the indorsers, guarantors, or sureties hereof, fail in business, ask a respite, or make application for an adjudication in bankruptcy, or commit an act of bankruptcy, or have an action of bankruptcy brought against him, or apply for a receiver, or have a receiver appointed before the maturity of this note, this note and every other debt, liability or obligation, direct or contingent, due by the undersigned or any of them to the said American Bank & Trust Company or the holder shall immediately become due and exigible, without demand, notice, or putting in default, notwithstanding any credit or time allowed the maker by any instrument evidencing any of said liabilities."

It is probable that such set-off might be available even in the absence of contract under section 68 of the Bankruptcy Act, which provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." Comp. St. § 9652.

The trustee contends, however, that the bank had no right to impute the payment or credit the amount of the deposit, so set off against a secured note, indorsed by a surety, instead of one secured by chattel mortgage. The bank contended the contrary unsuccessfully before the referee, and repeats the contention here on review.

The sole question presented, therefore, is whether or not the American Bank & Trust Company had a right to impute or credit the bankrupt's balance on deposit ($2,006.72) against the indorsed note of $4,000, instead of against the note of $3,000 secured by chattel mortgage.

[1, 2] The bank cites Remington on Bankruptcy, vol. 4, § 1452, p. 164, and several decisions of federal courts to the effect that the general doctrine is that the debtor has a right, if he pleases, to make the appropriation or imputation of payments; if he omits doing so, the creditor may, even though he may impute payment to an unsecured debt rather than to a secured one; that, moreover, the matter of imputation of such payments is not controlled by the state statutes or local decisions of the state courts. Unquestionably the general doctrine first referred to might apply were it not for the fact that the second is an erroneous assumption. The Bankruptcy Act, by section 68, specifically provides for a set-off or compensation of debts between a bankrupt and his creditors. Ordinarily, and in cases arising exclusively under the laws of the United States, the rule as to set-off cannot be influenced by local law or usage. U. S. v. Robeson, 34 U. S. (9 Pet.) 319, 9 L. Ed. 142. But there is no pretense made in section 68 or any other section of the Bankruptcy Act to prescribe for or regulate the imputation of payments where there is a plurality of debts of unequal rank between such bankrupt and a creditor. It is precisely in such situations as this, where the Constitution, treaties, or statutes of the United States have not otherwise provided, that the laws of the state become rules of decision in the courts of the United States. R. S. 721; U. S. Comp. Stat. Ann. 1538.

In Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289, Chief Justice Marshall said:

"This court has uniformly professed its disposition, in cases depending on the laws of a particular state, to adopt the construction which the courts of the state have given to those laws. This course is founded on the principle, supposed to be universally recognized, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus no court in the universe, which professed to be governed by principle, would, we presume, undertake to say, that the courts of Great Britain, or of France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding. We receive the construction given by the courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction, than to depart from the words of the statute. On this principle, the construction given by this court to the Constitution and laws of the United States is received by all as the true construction; and on the same principle the construction given by the courts of the several states to the legislative acts of those states is received as true, unless they come in conflict with the Constitution, laws, or treaties of the United States."

By chapter 5 of the Louisiana Revised Civil Code, verbis, "Of the manner in which obligations are extinguished," section 3, verbis, "Of imputation of payments," the law of the case is prescribed in four articles, which are as follows, and should be considered together:

"Art. 2163. The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge.

"Art. 2164. The debtor of a debt, which bears interest or produces rents, cannot, without the consent of the creditor, impute to the reduction of the capital any payment he may make, when there is interest or rent due. Every payment which does not extinguish both the principal and the interest, must be imputed first to the payment of the interest.

"Art. 2165. When the debtor of several debts has accepted a receipt, by which the creditor has imputed what he has received to one of the debts specially, the debtor can no longer require the imputation to be made to a different debt, unless there have been fraud or surprise on the part of the creditor.

"Art. 2166. When the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time

most interest in discharging, of those that are equally due; otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable. If the debts be of a like nature, the imputation is made to the debt which has been longest due; if all things are equal, it is made proportionally."

In construing these articles, the Supreme Court of Louisiana has repeatedly held that the imputation of payment must be made to the debt which was most burdensome or onerous to the debtor, or which was first due, or was secured by mortgage, or which he had the greatest interest in discharging first. Johnson v. Sterling, 3 Mart. (N. S.) 483; Wickner v. Croghan, 4 Mart. (N. S.) 79; Denis v. Ramouin, 1 Rob. 318; Forstall v. Blanchard, 12 La. 1; Spiller v. Creditors, 16 La. Ann. 292; New Orleans Insurance Co. v. Tio, 15 La. Ann. 174; Robson and Allen v. McKoin, 18 La. Ann. 544.

[3] It will be noted that in the instant case the three notes became due and exigible, according to their stipulations, on May 26, 1924, upon the appointment of a receiver in the state court. By this equalization of these maturities, and the identical terms and stipulations of each note, and because of the provisions of article 2164, it was incumbent on the bank, when availing itself of its right to a set-off against the balance on deposit, to impute the credit to the payment of the interest due, if any, on each of the three notes as of that date, and the surplus remaining, if any, according to article 2166.

In the brief and argument for the bank, citations of French commentators and decided cases are relied on to sustain the proposition that the debtor has the most moral and pecuniary obligation to discharge that debt secured by a surety, for the reason that he is bound in honor to protect his surety, and by doing so he discharges himself toward two persons. Undoubtedly, this is so where the contest lies simply between a secured and an unsecured debt. But here the contest is between two notes, secured by a surety, and one secured by a chattel mortgage on machinery necessary to keep the debtor's business intact, in the interest of the debtor himself no less than to his creditors, who are entitled equitably to all of his property as a common pledge for his debts. Assuredly the debtor, under these circumstances, was entitled to an imputation of the credit to the payment of that debt secured by such mortgage. In the case of New Orleans Insurance Co. v. Tio, 15 La. Ann. 174, cited supra, the Louisiana Supreme Court held: "Where

there is a question of imputation of payment, the payment will be imputed to the debt bearing a mortgage, rather than to those which do not bear a mortgage."

The record here shows that the debtor, now bankrupt, made no imputation; that the bank, availing itself of the terms of the note, and without notice to the bankrupt, the receiver, or subsequently to the trustee, indorsed a credit of the amount of the debtor's bank balance on the note of its choice then in its portfolio, thereby discharging the personal surety, A. Patorno, to that extent, thus availing itself of the benefit of the chattel mortgage pledged as collateral to it, to the disadvantage of the debtor and his creditors generally. By this procedure, no receipt bearing an imputation was given the debtor, as contemplated by article 2166, La. R. C. C. Therefore, as a matter of law, the imputation must be made to the payment, first, of interest due on the three notes, if any, under La. R. C. C. 2164, and, next, to the principal of the note secured by chattel mortgage, as being the debt the debtor had the most interest in discharging under La. R. C. C. 2166.

There will accordingly be judgment dismissing the petition for review, at petitioner's cost, and the cause remanded to the referee for further proceedings, in accordance with the opinion here expressed.